Citation Nr: 1339311 
Decision Date: 11/29/13 Archive Date: 12/13/13

DOCKET NO. 08-01 621 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for a right knee disability, to include as due to service-connected left knee disability.

2. Entitlement to service connection for a left hip disability, to include as due to service-connected left knee left knee disability.

3. Entitlement to service connection for a low back disability, to include as due to service-connected left knee left knee disability.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

C. J. Houbeck, Counsel


INTRODUCTION

The Veteran served on active duty in the United States Navy from May 1984 to May 1987, was a member of the Navy Reserve for approximately 20 years with periods of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA), and had another period of active duty from January 2003 to September 2003.

These matters come before the Board of Veterans Appeals (Board) on appeal from a March 2007 rating decision by the Waco, Texas, Regional Office (RO) of the United States Department of Veterans Affairs (VA).

The Veteran testified at a June 2010 Board hearing held before the undersigned at the RO. A transcript of the hearing is associated with the claims file.

The above issues were remanded by the Board for additional development in August 2010. The August 2010 Board remand also included the issues of entitlement to service connection for right and left foot disabilities. In a June 2012 rating decision, the Appeals Management Center (AMC) granted entitlement to service connection for right and left foot plantar fasciitis. This decision was a complete grant of benefits with respect to the right and left foot disability issues. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997). Therefore, the issues are not currently on appeal before the Board.

In December 2012 and after the final Supplemental Statement of the Case (SSOC), the Veteran submitted an additional statement in support of his claims, which was accompanied by three private medical documents. Two of these documents were of record at the time of the final SSOC in June 2012. A March 2010 letter from the Veteran's private physician does not appear to have been previously provided; however, the letter is entirely duplicative of a June 2010 letter from the same private physician, save that the June 2010 letter also indicated that the physician had reviewed a copy of the Veteran's claims file. As such, a remand is not required for the AOJ to consider the evidence in the first instance. See 38 C.F.R. §§ 20.800, 20.1304(c) (2013).

The Board has not only reviewed the Veteran's physical claims file but also the electronic records maintained in the Virtual VA and Veteran's Benefits Management System (VBMS) paperless claims processing systems to ensure a total review of the evidence.


FINDINGS OF FACT

1. The preponderance of the evidence is against finding that the Veteran has a right knee disability that is etiologically related to a disease, injury, or event in service or service-connected disability.

2. The preponderance of the evidence is against finding that the Veteran has a left hip disability that is etiologically related to a disease, injury, or event in service or service-connected disability.

3. The preponderance of the evidence is against finding that the Veteran has a low back disability that is etiologically related to a disease, injury, or event in service or service-connected disability.


CONCLUSIONS OF LAW

1. A right knee disability was not incurred in and is not otherwise related to service, may not be presumed to have been incurred in service, and was not caused or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 1131, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. § 3.310 (2006); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309 (2013).

2. A left hip disability was not incurred in and is not otherwise related to service, may not be presumed to have been incurred in service, and was not caused or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 1131, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. § 3.310 (2006); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309 (2013).

3. A low back disability was not incurred in and is not otherwise related to service, may not be presumed to have been incurred in service, and was not caused or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 1131, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. § 3.310 (2006); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all the evidence submitted by or on behalf of the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

VA's Duties to Notify and Assist

With respect to the Veteran's claims, VA has met all statutory and regulatory notice and duty to assist provisions. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013).

When VA receives a complete or substantially complete application for benefits, it is required to notify the Veteran and his or her representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the United States Court of Appeals for Veterans Claims (Court) held that VA must inform the Veteran of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the Veteran is expected to provide; and (4) request that the Veteran provide any evidence in his or her possession that pertains to the claim. The requirement of requesting that the Veteran provide any evidence in his possession that pertains to the claim was eliminated by the Secretary during the course of this appeal. See 73 Fed. Reg. 23353 (final rule eliminating fourth element notice as required under Pelegrini II, effective May 30, 2008). Thus, any error related to this element is harmless.

In this case, letters dated in May 2007 and October 2010 fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1) (2013); Quartuccio, at 187. The Veteran was advised that it was ultimately his responsibility to give VA any evidence pertaining to the claims. The letters informed him that additional information or evidence was needed to support his claims and asked him to send the information or evidence to VA. See Pelegrini II, at 120-121. The May 2007 letter explained how to establish entitlement to service connection on a secondary basis. The letters also explained to the Veteran how disability ratings and effective dates are determined. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

As noted above, the Veteran also was afforded a hearing before the undersigned Acting Veterans Law Judge (AVLJ) during which he presented oral argument in support of his claims. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) (2011) requires that the officer who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the AVLJ fully explained the issues on appeal during the hearing and specifically discussed the bases of the prior determination, the element(s) of the claims that were lacking to substantiate the claims for benefits, and suggested the submission of evidence that would be beneficial to the Veteran's claims. Indeed, based in part on the evidence elicited during the hearing the Board remanded the Veteran's claims for additional development, including a VA examination. Significantly, neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. By contrast, the hearing focused on the elements necessary to substantiate the claims, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claims. As such, the Board finds that, consistent with Bryant, the AVLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

Furthermore, even if any notice deficiency is present in this case, the Board finds that any prejudice due to such error has been overcome in this case by the following: (1) based on the communications sent to the Veteran over the course of this appeal, the Veteran clearly has actual knowledge of the evidence the Veteran is required to submit in this case; and (2) based on the Veteran's contentions as well as the communications provided to the Veteran by VA, it is reasonable to expect that the Veteran understands what was needed to prevail. See Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974) ("[N]o error can be predicated on insufficiency of notice since its purpose had been served."). In order for the Court to be persuaded that no prejudice resulted from a notice error, "the record must demonstrate that, despite the error, the adjudication was nevertheless essentially fair." Dunlap v. Nicholson, 21 Vet. App. 112, 118 (2007). 

In this case, the Veteran has been continuously represented by an experienced Veterans Service Organization and has submitted argument in support of his claims. These arguments have referenced the applicable law and regulations necessary for a grant of entitlement to service connection. Thus, the Board finds that the Veteran has actual knowledge as to the information and evidence necessary for him to prevail on his claims and is not prejudiced by a decision in this case. As such, a remand for additional notice would serve no useful purpose and would in no way benefit the Veteran. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on the VA with no benefit flowing to the Veteran are to be avoided).

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA medical records are in the file. Private medical records identified by the Veteran have been obtained, to the extent possible. The Veteran has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claims.

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claims, as defined by law. See 38 C.F.R. § 3.159(c)(4). The Veteran was provided a VA examination for his claims in January 2011, with an addendum obtained May 2012. The examiner considered the Veteran's claims and diagnosed disabilities of the low back, right knee, and left hip, but concluded that the disabilities were not caused or aggravated by the Veteran's military service or service-connected left knee disability. As will be discussed in greater detail below, the examiner's opinions were based on review of the claims file and available medical records, the Veteran's reported history, his current symptoms, and a physical examination. The Board, therefore, finds the VA examination report and addendum to be thorough, complete, and sufficient upon which to base a decision with respect to the Veteran's claims for service connection. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). 

Based on the October 2010 notice letter, the association of VA treatment records with the claims file, the January 2011 VA examination and May 2012 addendum opinion, and subsequent readjudication of the claims, the Board finds that there has been substantial compliance with its September 2010 remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand instructions, and imposes upon the VA a concomitant duty to ensure compliance with the terms of the remand); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131 (West 2002 & Supp. 2013). Active military, naval, or air service includes any period of active duty for training (ACDUTRA) during which the individual concerned was disabled from a disease or injury incurred in line of duty. 38 U.S.C.A. § 101(21) and (24) (West 2002 & Supp. 2013); 38 C.F.R. § 3.6(a) (2013). Active military, naval, or air service also includes any period of inactive duty training (INACDUTRA) duty in which the individual concerned was disabled from injury incurred in the line of duty. Id. Accordingly, service connection may be granted for disability resulting from disease or injury incurred in, or aggravated, while performing ACDUTRA or from injury incurred or aggravated while performing INACDUTRA. 38 U.S.C.A. §§ 101(24), 106, 1131 (West 2002 & Supp. 2013). ACDUTRA includes full time duty performed by members of the National Guard of any state or the reservists. 38 C.F.R. § 3.6(c). INACDUTRA includes duty other than full time duty performed by a member of the Reserves or the National Guard of any state. 38 C.F.R. § 3.6(d). 

That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b) (2013); but see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (holding that a continuity of symptomatology affords a route to service connection only for specific chronic disabilities). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

Certain evidentiary presumptions - such as the presumption of sound condition at entrance to service, the presumption of aggravation during service of preexisting diseases or injuries which undergo an increase in severity during service, and the presumption of service incurrence for certain diseases which manifest themselves to a degree of disability of 10 percent or more within a specified time after separation from service are provided by law to assist veterans in establishing service connection for a disability or disabilities. 38 U.S.C.A. § 1112 (West 2002); 38 C.F.R. §§ 3.304(b), 3.306, 3.307, 3.309 (2013).

The presumption of soundness under 38 U.S.C.A. § 1111 does not apply when a claimant, veteran or otherwise, has not been examined contemporaneous to entering a period of ACDUTRA. Smith v. Shinseki, 24 Vet. App. 40, 45 (2010). The presumption pertaining to chronic diseases under 38 U.S.C.A. § 1112 and the presumption of aggravation under 38 U.S.C.A. § 1153 do not apply to ACDUTRA or INACDUTRA service. Id; see also Acciola v. Peake, 22 Vet. App. 320 (2008); Mercado-Martinez v. West, 11 Vet. App. 415, 419 (1998); Paulson v. Brown, 7 Vet. App. 466, 470 (1995).

When a claim for service connection is based only on a period of ACDUTRA, there must be some evidence that the appellant became disabled as a result of a disease or injury incurred or aggravated in the line of duty during the period of ACDUTRA. Smith, 24 Vet. App. at 47. In the absence of such evidence, the period of ACDUTRA would not qualify as "active military, naval, or air service," and the appellant would not qualify as a "veteran" by virtue of ACDUTRA service alone. Id.

With respect to a claim for aggravation of a preexisting condition during ACDUTRA, the claimant must provide direct evidence both that a worsening of the condition occurred during the period of ACDUTRA and that the worsening was caused by the period of ACDUTRA. Smith, 24 Vet. App. at 48.

For veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including arthritis, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from active service. 38 U.S.C.A. §§ 1101, 1112, 1137 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.307, 3.309 (2013). 

In this case, however, there is no presumed service connection because arthritis of the low back, left hip, or right knee was not medically diagnosed within one year of discharge from active service and such presumption is not applicable to periods of ACDUTRA. In addition, the claim file does not include a physical examination report at the onset of the Veteran's ACDUTRA period when he claims to have incurred his right knee injury. Thus, the presumption of soundness and presumption of aggravation are not for application in this situation where the claimed injury occurred during ACDUTRA and the evidence does not indicate that a medical examination was made at the start of the relevant period of ACDUTRA. Therefore, the Board will consider the claims on a direct and secondary basis.

To establish a right to compensation for a present disability on a direct basis, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may also be established for any disability which is proximately due to or the result of a service-connected disease or injury. See 38 C.F.R. § 3.310 (2006). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Id.; see also Allen v. Brown, 7 Vet. App. 439 (1995).

The Board observes that the provisions of 38 C.F.R. § 3.310 were amended effective as of October 20, 2006, during the pendency of the instant appeal. See 71 Fed. Reg. 52744-47 (Sept. 7, 2006). The amendment sets a standard by which a claim based on aggravation of a nonservice-connected disability by service-connected one is judged. Although the VA has indicated that the purpose of the regulation was merely to apply the Court's ruling in Allen, it was made clear in the comments to the regulation that the changes were intended to place a burden on the Veteran to establish a pre-aggravation baseline level of disability for the non-service connected disability before an award of service connection based on aggravation may be made. This had not been the VA's practice and thus suggests that the recent change amounts to a substantive change in the regulation. For this reason and as the Veteran's claims were pending before the regulatory change was made, the Board will consider his claim under the prior version of 38 C.F.R. § 3.310 as it is more favorable to the Veteran.

The Veteran contends that his current right knee, left hip, and low back disabilities were caused or aggravated by his service-connected left knee disability. Essentially he asserts that his problems in these joints are the result of overcompensating for pain in his service-connected left knee, to include as due to a limping gait. That said, the Veteran also contends that he incurred his right knee disability as a result of an injury during a period of ACDUTRA. 

The service treatment records indicate that in January 1987, the Veteran reported pain in both sides of his back. The assessment was vomiting and low back pain, etiology unknown. In December 1995, the Veteran reported low back pain due to his civilian job and was placed on a profile, but as his condition had improved by the next month the profile was upgraded. In November 2001, the Veteran suffered a partial tear of the anterior cruciate ligament (ACL) in his left knee during a training drill involving close contact. The records do not include complaints of right knee pain, which the Veteran attributes to the fact that while his right knee also was injured at the same time as the left he did not complain of right knee problems because the left knee was much more painful. The Veteran reportedly experienced subjective instability of the left knee over the following months. In January 2003, the Veteran reported that while running during a softball game his knee buckled and gave out. A February 2003 treatment record indicated that the Veteran had experienced two episodes of giving way. Later that month he underwent left ACL reconstruction. Another February 2003 record initially noted a left ACL reconstruction, but later in the same document the treatment provider erroneously indicated that the reconstruction was of the right ACL. In August 2003, a Report of Medical Assessment included complaints of knee, shoulder, hand, nose, feet, and tinnitus problems. From May 2004 through August 2004, the Veteran sought treatment for right shoulder, left knee, and feet problems. At the Veteran's September 2004 Medical Board examination, the Veteran denied a history of back problems, but reported left knee pain and locking. The comments section of the September 2004 Report of Medical History included a notation of degenerative joint disease of the right knee status post ACL reconstruction. (This notation clearly is in error and should refer to the left knee.) An October 2004 Medical Board proceeding recommended separation based on bilateral feet, right shoulder, and left knee problems. There was no notation of right knee, left hip, or low back problems at that time.

In December 2004, the Veteran sought initial treatment with VA, at which time he requested pain medication for various arthralgias, specifically mentioning his left knee and feet. In November 2005, the Veteran sought treatment for left knee pain that occurred with walking any length of time. On examination, there was no left knee laxity and he had normal muscle strength. In May 2006, the Veteran stated that his left knee sometimes felt like it was locking and that it had caused him to fall. There was slight instability on anterior drawer testing, but medial stability was excellent. In October 2006, the Veteran described a long history of left knee pain, but on examination the knee was stable.

In August 2008, the Veteran complained of low back pain for the previous three days. He noted having been lifting very heavy loads over the previous four days. On examination, the Veteran was limping and had decreased range of motion and tenderness to palpation in the low back. In October 2008, the Veteran reported increased back pain after riding a tilt-a-whirl the previous day and that particularly hurt when twisting the back. 

In December 2008, the Veteran was afforded a VA examination for his feet. At that time, the Veteran had normal weight bearing and standing and walking also were normal. 

In November 2009, the Veteran reported left knee locking and feelings of instability and attributed problems with his bilateral feet and left hip to his left knee problems. The Veteran was provided with a knee brace. A May 2010 VA treatment record included complaints of right shoulder and left knee pain, although the primary left knee problem was less pain than occasional locking that made getting out of a chair or climbing stairs difficult. On examination, the left knee was stable and ambulation appeared normal.

A June 2010 letter from his private physician who indicated that his left knee was "doing fairly well." 

During VA treatment for left knee pain in August 2010 there was no joint instability and ambulation appeared normal.

An October 2010 letter from the Veteran's private treating physician. The physician concluded that the Veteran's "low back and right knee pain" were "directly related to compensation" for left knee problems. In addition, "He also has left hip pain that in my opinion has come as a result of compensating for his service related injury." On examination, the Veteran had tenderness and decreased range of motion due to trying to walk and work with the left knee disability. The physician concluded, "It is my feeling that all of these areas including the left hip, the feet, the right knee and the lower back are directly related to the injuries of his left knee."

The Veteran was afforded a VA examination in January 2011. The examiner noted review of the claims file. The Veteran reported that he had injured his right knee at the same time as his left knee, during service in 2001, with intermittent pain initially that had become constant over the previous two to three years. The Veteran complained of left hip popping from 2002 with daily associated pain deep in the hip. Low back pain began in 2003, according to the Veteran, with radiation into the buttocks and lower extremities. After consideration of the Veteran's reported symptoms and physical examination, the VA examining physician diagnosed right patellofemoral syndrome, lumbar myfascial syndrome, and left hip myofascial syndrome. As to etiology, the VA physician concluded that it was less likely as not that the Veteran's current right knee, left hip, and low back disabilities were caused by, aggravated by, or the result of the Veteran's military service. The rationale was that there was that there were no medical records of right knee or left hip problems in service and the sole low back problems were attributed to a civilian injury. In addition, the examiner noted, "I know of no medical authority or peer reviewed medical literature which relates the development of [left hip degenerative joint disease, low back pain, and patellofemoral syndrome] to a previously existing left knee problem." In addition, on examination the Veteran was found to have a normal gait and no biomechanical gait disturbance (such as limping) that could cause problems with the left hip, right knee, or low back. The left knee was stable on examination. The Veteran had no unusual calluses or skin breakdown noted. The examiner found no evidence of unusual shoe wear pattern. 

In a May 2012 addendum, the examining physician concluded that the Veteran's left hip mild degenerative joint disease with secondary myofascial pain, lumbar myofascial pain syndrome, and right knee patellofemoral syndrome were less likely as not caused by, aggravated by, or the result of the Veteran's service-connected left knee disability. The rationale again was the absence of medical authority or peer reviewed medical literature relating the development of left hip, low back, or right knee problems to a left knee disability. In addition, the examiner noted the Veteran's normal gait, the absence of any current biomechanical instability of the left knee, and the absence of limping that could cause myofascial pain on the opposite side.

Having reviewed the complete record, the Board concludes that the preponderance of the evidence is against finding that the Veteran has a right knee, low back, or left hip disability that was incurred in or is otherwise related to military service or was caused or aggravated by a service-connected disability, to include the Veteran's left knee disability. 

As to granting entitlement to service connection as secondary to his service-connected left knee disability, the Board finds the January 2011 VA examination report and May 2012 addendum of significant probative value. The examiner's opinions were based on an interview of the Veteran, his reported medical history, review of the medical evidence of record (including x-rays), and physical examination. Further, a complete and thorough rationale was provided for the opinions rendered. Specifically, the examiner concluded that it was less likely than not that the Veteran's right knee, left hip, or low back problems were caused or aggravated by his service-connected left knee disability. The examiner discussed the absence of in-service complaints of left hip, right knee, or low back problems. Of greater significance, however, the examiner stated that the Veteran had a normal gait and no biomechanical instability or other gait abnormality (such as limping) that could cause or aggravate the right knee, left hip, or low back problems. Finally, the examiner indicated that he was aware of no studies linking the current left hip, right knee, and low back disabilities to his service-connected left knee problems. The examiner's conclusions are fully explained and consistent with the evidence of record.

By contrast, the Board finds the October 2010 private treatment letter attributing current left hip, right knee, and low back pain to overcompensating for the Veteran's left knee disability of significantly less probative value. The private physician did not indicate review of the claims file and did not otherwise indicate awareness of or attempt to reconcile the December 2008 VA examination report and multiple VA treatment records showing that the Veteran had a normal gait. Perhaps most significantly, the October 2010 letter does not link any specific right knee, left hip, or low back disability to the left knee disability. Instead, the private physician discussed only low back, left hip, and right knee pain in relation to the left knee disability. See Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999) (pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted). In light of the foregoing, only limited probative value can be given to the October 2010 private treatment provider's opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (explaining that factors affecting the probative value of a medical opinion are whether the opinion is based on sufficient facts or data, is the product of reliable principles reliably applied to the facts, and the reasoning employed by the expert).

The Board also has considered the reports of the Veteran that his right knee, left hip, and low back problems are the result of his service-connected left knee disability. In that regard, individuals can attest to factual matters of which he or she has first-hand knowledge, such as left knee, right knee, left hip, and low back pain and subjective instability of the left knee, and the Veteran's assertions in that regard are entitled to some probative weight. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, determining the etiology of right knee, left hip, and low back disabilities falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (explaining in footnote 4 that a veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions). The Board finds the Veteran's assertions particularly problematic given the inherent complexity of the internal movement of the various joints and their interrelationships. As such, the Board affords the Veteran's statements regarding a link between his current right knee, left hip, and low back disabilities and his service-connected left knee disability no probative weight.

The Board also notes that the Veteran is service-connected for a bilateral foot disability; however, there is no lay or medical evidence indicating any association between his current right knee, left hip, and low back problems and his service-connected bilateral foot disability. As such, entitlement to service connection as secondary to his bilateral foot disability would not be warranted.

As to otherwise granting entitlement to service connection on a direct basis, the Board has considered the Veteran's contentions that his right knee problems began as a result of the same 2001 incident wherein he injured his service-connected left knee and that his left hip and low back also began to bother him in 2002 or 2003, suggesting the possibility that his current right knee, left hip, and low back disabilities were incurred in or are otherwise related to his military service. To the extent that the Veteran contends that he injured his right knee in 2001 during ACDUTRA or that he has been experiencing a continuity of right knee, left hip, and low back problems from service, the Board finds these representations less than credible. In that regard, credibility is an adjudicative and not a medical determination. The Board has "the authority to discount the weight and probity of evidence in the light of its own inherent characteristics and its relationship to other items of evidence." Madden v. Brown, 125 F.3d 1477, 1481 (Fed. Cir. 1997). In this case, the "inherent characteristics" of the Veteran's current statements as to an in-service right knee injury and ongoing right knee, left hip, and low back problems from service are inconsistent with the objective medical record and the Veteran's own contemporaneous statements.

As discussed above, numerous service treatment records documented ongoing problems with the Veteran's left knee, feet, and right shoulder, as well as notations as to problems with the hands, nose, and ears. These records do not include complaints of right knee, left hip, or low back problems. Indeed, several of the records during the September 2004 and October 2004 ongoing evaluation of the Veteran's physical ability to continue in service included explicit denials of some of these problems. In August 2008, when the Veteran first sought post-service treatment for back problems, he indicated onset of problems three days previously and did not describe any ongoing low back problems. The Board recognizes that the Veteran had reported back pain on two occasions in service, with the last report in 1995; however, subsequent service treatment records included explicit denials of ongoing low back problems and, indeed, the Veteran does not contend that ongoing low back problems manifested until the 2000s. As to the Veteran's left hip, when he first reported problems several years after service he made no mention of in-service problems and mentioned only that he believed the problems were attributable to his left knee. For the right knee, the Board has considered the Veteran's contentions that he did not report injuring his right knee at the same time as the left knee because the right hurt significantly less than the left. To the extent that such a report might be plausible as to the absence of right knee complaints at the time of initial injury, it does not explain why in numerous subsequent treatments after the left knee had been stabilized that he would not report ongoing right knee problems stemming from the same incident. Moreover, during numerous treatment visits the Veteran reported ongoing problems with other joints, such as the feet and right shoulder, but failed to even mention ongoing right knee problems. The Board finds it reasonable to conclude that had the Veteran been experiencing ongoing right knee, left hip, and/or low back problems that he would have reported such problems at the same time as complaining of left knee, bilateral feet, and right shoulder problems, given the generally similar orthopedic nature of the symptoms and, in the case of the right knee, the current contention that the onset of such symptoms was at the same incident that resulted in his left knee injury.

The Board also has considered the case of Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006), wherein the Court held that the Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. However, this is not a case in which the record is merely silent regarding whether he had ongoing right knee problems from 2001, left hip problems from 2002, and low back problems from 2003. Rather, the medical treatment reports at the time the Veteran claims to have been experiencing such problems do not diagnose right knee, left hip, or low back disabilities or include any reports of associated symptoms, while at the same time discussing problems with other joints, such as the left knee, bilateral feet, and right shoulder. Moreover, on several occasions the Veteran explicitly denied such problems. 

No medical professional has linked the Veteran's current low back, right knee, or left hip disability to his military service and, indeed, there is medical evidence to the contrary. The January 2011 VA examination report considered the Veteran's reports of onset and/or injury in service, but concluded that it was less likely than not that the current low back, left hip, and right knee injuries were caused by or otherwise related to military service. The examiner found the absence of service treatment records of significantly greater probative value than the Veteran's lay statements, which is consistent with the Board's conclusion that such lay statements are not credible. Thus, there is no credible or competent evidence linking any right knee, left hip, or low back disability directly to the Veteran's military service.

In conclusion, the most probative evidence of record indicates that the Veteran's current right knee, left hip, and low back disabilities were not incurred in service and are not otherwise shown to be related to his military service or to be caused or aggravated by a service-connected disability. As discussed, the Board finds the January 2011 VA examination report and May 2012 addendum of significantly greater probative value than the Veteran's lay statements and the October 2010 private physician's letter associating current right knee, left hip, and low back problems with the Veteran's service-connected left knee disability. There is no credible or competent evidence linking any current right knee, left hip, or low back disability directly to the Veteran's military service. As the preponderance of the evidence is against the claims, the benefit-of-the-doubt rule does not apply, and the claims for service connection must be denied. See 38 U.S.C.A. § 5107(b) (West 2002 & Supp. 2013); see generally Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001).


ORDER

Entitlement to service connection for a right knee disability is denied.

Entitlement to service connection for a left hip disability is denied.

Entitlement to service connection for a low back disability is denied.



____________________________________________
WILLIAM H. DONNELLY
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs