Manuel A. MERCADO–MARTINEZ,
Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 96–1596.

United States Court of Veterans Appeals.

Sept. 8, 1998.

Manuel A. Mercado-Martinez, pro se.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Ralph G. Davis, Washington, DC, were on the pleadings for appellee.

Before KRAMER, FARLEY, and HOLDAWAY, Judges.

FARLEY, Judge:

This is an appeal from an October 16, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which found that the veteran had failed to submit new and material evidence to reopen his claims for service connection for a psychiatric disorder and a left knee disorder. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). The Secretary has filed a motion for summary affirmance in lieu of a brief. For the reasons that follow, the Court will grant the Secretary's motion and affirm the Board's October 16, 1996, decision.

## I. BACKGROUND

The veteran served on active duty in the U.S. Army from November 1975 to January 1976. Record (R.) at 57. In June 1976, he submitted a claim for service connection for a nervous disorder and a left knee disorder. R. at 11–14. The regional office (RO) found that the veteran did suffer from neurosis, but that his condition was not related to service, and assigned a 30% non-service-connected rating. R. at 41. The RO also denied the veteran's claim for a left knee disorder as not shown by the evidence. *Id.* On appeal, the BVA also found that the veteran's neurosis was not incurred in or aggravated by service and that the current existence of a left knee disorder had not been demonstrated. R. at 50–53.

The veteran had service with the Army National Guard from October 1978 to February 1979, and from September 1980 to August 1982. R. at 59, 60. He filed another application for VA compensation or pension in May 1993. R. at 73–76. In that application, the veteran claimed that he currently suffered from a "severe nervous condition (neurosis) incurred in the Armed Forces and [a] left knee and left ankle injury also incurred in the National Guard[ ]." R. at 74. He alleged that he was first treated for his nervous condition in 1975, during active duty and that he received treatment for the same condition from 1979 to 1980 while serving in the National Guard. *Id.* The veteran also claimed that he had been treated in 1979 to 1980 during his service in the National Guard for a left knee injury and a left ankle condition. *Id.* Evidence submitted in support of that claim included service "sick slips" dated in 1979 and 1980 showing that the veteran had been put on light duty after a "stroke" in his left leg and that he had been treated for nervousness (R. at 66–68) and also included VA medical records from 1976 to 1977, 1980,

and 1991 to 1993 (R. at 83–141, 147–56). The 1976 and 1977 records show that the veteran was treated at the mental hygiene clinic and had been diagnosed with anxiety reaction, anxiety neurosis, and schizophrenia. *See* R. at 109–22, 129, 135, 137, 139. A 1980 record noted that the veteran had complained of pain in both knees, but did not provide a diagnosis. R. at 107. None of the records showed that the veteran claimed conditions were causally related to his military service.

In a February 14, 1994, rating decision, the RO found that the veteran had failed to submit new and material evidence to reopen his claims for service connection for a nervous condition and a left knee condition. R. at 158–59. The veteran filed a Notice of Disagreement in March 1993. R. at 164. In June 1994, he amended his claim to seek service connection for schizophrenia, which he alleged was incurred in July 1976, within one year of his discharge from his first period of service. R. at 177. The RO issued a confirmed rating decision in October 1994, continuing to deny the veteran's claims for service connection for a nervous condition and a left knee condition. R. at 191–92.

The veteran testified at a hearing before the RO in December 1994. R. at 201–17. He reported that before he entered the Army he was in "perfect condition" physically and mentally. R. at 203. He reported that during his first period of service, while in basic training, he had fallen and hurt his left knee and ankle. R. at 205. He also reported that he had been treated for headaches which began when he fell and injured his knee. *Id.* The veteran felt that his superiors retaliated against him because he went to sick call for his fall, using racial slurs, calling him a loafer, and putting a lot of pressure on him. R. at 206–07. He stated that his behavior began to change and he became aggressive and had trouble controlling his temper. R. at 206, 212. He attributed this change in behavior to his fall and the pressures his superiors placed on him during basic training. R. at 208. He reported that after his discharge he suffered audio and visual hallucinations. R. at 212. Approximately two years after his discharge, he joined the National Guard, was given an entrance examination, and was accepted into service. R. at 213–14. He reported that he remained in the National Guard until 1982, when he had a "relapse" of his condition. R. at 214. He related that he had become aggressive again, attacked a lieutenant, and was discharged due to that incident. R. at 214–15.

In March 1995, the RO received the veteran's National Guard records. R. at 220–29. During his 1978 entrance examination, his lower extremities, musculoskeletal systems, and psychiatric condition were all evaluated as "normal." R. at 226. The examiner noted that the veteran had a scar on his left anterior thigh and that he reported that he had been hospitalized in 1976 for insomnia with no recurrence. R. at 226–29. The veteran also reported that he did not then, nor had he ever suffered from swollen or painful joints; any bone, joint, or other deformity; or a 'trick' or locked knee. R. at 228. He did, however, report a history of "nervous trouble." *Id.* The veteran also submitted duplicate records reflecting his treatment in 1976. R. at 241–45. The RO issued a rating decision in October 1995 confirming its prior decision that the veteran had failed to submit new and material evidence to reopen his claim for service connection for a neuropsychiatric disorder. R. at 247–48.

The issues certified on appeal to the BVA were (i) whether new and material evidence had been submitted to reopen the veteran's claim for service connection for a psychiatric disorder, and (ii) whether new and material evidence had been submitted to reopen his claim for service connection for a left knee disorder. R. at 266. In the October 16, 1996, decision here on appeal, the Board found that the evidence submitted was not new and material and did not reopen either claim. R. at 1–9. The Board specifically found that "[t]he additional evidence, when considered with all the evidence, both old and new, presents no reasonable possibility of changing the previous decision denying entitlement to service connection for a left knee disorder, *as there is no medical evidence of record that the veteran currently has a knee disorder.*" R. at 3 (emphasis added). The Board also found that the evidence presented

"no reasonable possibility of changing the previous decision denying entitlement to service connection for a psychiatric disorder, *as there is no medical evidence of record that a psychiatric disorder was incurred in or aggravated by service." Id.(emphasis added).* This appeal followed.

## II. ANALYSIS

### A. New or Reopened Claim

■ Section 7104(b) of title 38, U.S.Code, provides: "Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." Section 5108 of title 38 states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108; *see also* 38 U.S.C. § 7104(b); *Spencer v. Brown,* 4 Vet.App. 283, 286–87 (1993), *aff'd,* 17 F.3d 368 (Fed.Cir.1994); *Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991). Therefore, once a BVA decision becomes final under section 7104(b), "the Board does not have jurisdiction to consider [the previously adjudicated claim] unless new and material evidence is presented, and before the Board may reopen such a claim, it must so find." *Barnett v. Brown,* 83 F.3d 1380, 1383 (Fed.Cir.1996); *Butler v. Brown,* 9 Vet.App. 167, 171 (1996) (When new and material evidence has not been submitted in a previously disallowed claim "[f]urther analysis ... is neither required, nor permitted."). The issue of whether evidence is new and material is a conclusion of law which the Court reviews de novo. *Beausoleil v. Brown,* 8 Vet.App. 459, 463 (1996).

■ In his application for benefits which initiated this appeal, the veteran claimed that he had incurred a nervous disorder "in the Armed Forces" and a left knee disability "in the National Guards [sic]." R. at 74. In his hearing testimony, he alleged that he underwent an attitude change during his first period of service and had a "relapse" of this condition during his service in the National Guard. R. at 206, 121, 214. He attributed his change in attitude to others' reaction to a fall incurred during basic training, apparently during his first period of service. R. at 206, 208. The veteran's May 1993 application for benefits could, therefore, be interpreted to be both a claim to reopen his previously denied claim for service connection for conditions incurred during his first period of service *and* as a new claim for conditions incurred in or aggravated during his periods of service in the National Guard. Accordingly, the Court finds that the Board erred in that it considered the veteran's claims only in the context of whether new and material evidence had been submitted. As discussed below, however, the Court finds that this error was not prejudicial to the veteran and will affirm the Board's denial of the veteran's claims. *See* 38 U.S.C. § 7261(b) ("[T]he Court shall take due account of the rule of prejudicial error.").

### B. New and Material Evidence

■ When a claimant seeks to reopen a previously and finally denied claim, the Board is required to conduct a two-step analysis to determine whether new and material evidence has been presented. *Evans v. Brown,* 9 Vet.App. 273, 282–83 (1996); *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must be determined if the evidence presented since the last final disallowance of the claim is "new and material." *Evans,* 9 Vet.App. at 283. Second, the Board must reopen the claim and "review all of the evidence of record to determine the outcome of the claim on the merits." *Id.* Evidence is "new and material" if: (i) it was not of record at the time of the last final disallowance of the claim and is not merely cumulative of evidence of record; (ii) it is probative of the issue at hand; and, if it is "new" and "probative," (iii) it is reasonably likely to change the outcome when viewed in light of all the evidence of record. *Id.*

■ The last final disallowance of the veteran's claims for conditions allegedly incurred during his first period of service was the Board's December 1977 decision. R. at 50–53. The evidence submitted since that decision failed to establish that the veteran

currently suffers from any disorder of the left knee. The record is also void of any medical evidence establishing a causal nexus between the veteran's current psychiatric condition and his military service. Thus, the evidence submitted since the last final disallowance of the veteran's initial claims for service connection for a nervous disorder and a left knee condition associated with his first period of service is not new and material. The Court will therefore affirm the Board's October 1996 decision denying the veteran's claims for failure to submit new and material evidence.

### C. Claims Based Upon National Guard Service

Basic entitlement to compensation for veterans for service-connected disabilities derives from 38 U.S.C. § 1110, which provides, in part, as follows: "For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the *active military, naval, or air service* ... the United States will pay to any *veteran* thus disabled ... compensation as provided in this subchapter...." 38 U.S.C. § 1110 (emphasis added). *See* 38 U.S.C. §§ 1112, 1113(a); 38 C.F.R. §§ 3.303(a), 3.306 (1997). The term "veteran" is defined, in relevant part, as "a person who served in the active military, naval, or air service...." 38 U.S.C. § 101(2); *see also* 38 C.F.R. § 3.1(d). The term "active military, naval, or air service" is defined to include, inter alia, "any period of active duty for training *during which* the individual concerned was *disabled or died from a disease or injury incurred or aggravated in line of duty*." 38 U.S.C. § 101(24) (emphasis added); *see also* 38 C.F.R. § 3.6(a) (1997). The term "active duty for training" includes, inter alia, certain full time duty in the Army National Guard. 38 U.S.C. § 101(22); *see also* 38 C.F.R. § 3.6(c)(4). Thus, in order to establish basic eligibility for veterans benefits based upon his service in the National Guard, the appellant must establish that he was "disabled ... from a disease or injury incurred or aggravated in the line of duty [in the National Guard]." *See Paulson v. Brown,* 7 Vet.App. 466, 470

(1995) ("[A]n individual who has served only on active duty for training must establish a service-connected disability in order to achieve veteran status.").

Although the Board failed to consider specifically whether the veteran's claimed conditions were incurred in or aggravated by his service in the National Guard as a new claim, because the veteran has not established basic eligibility for veterans benefits, any error was harmless. *See* 38 U.S.C. § 7261(b). In order for service connection for a particular disability to be granted, a claimant must establish he or she has that disability and that there is "a relationship between the disability and an injury or disease incurred in service or some other manifestation of the disability during service." *Cuevas v. Principi,* 3 Vet.App. 542, 548 (1992). As the Board found in its new and material analysis, and as discussed by the Court above, the veteran has failed to submit evidence that he currently suffers from a current knee disability or that his current psychiatric condition is causally related to his military service. Therefore, to the extent the appellant intended to submit new claims for those conditions based upon his periods of service in the National Guard, he has failed to satisfy his initial burden of establishing status as a veteran by submitting any evidence of "a disease or injury incurred or aggravated in the line of duty." *See Paulson, supra.*

### III. CONCLUSION

Upon consideration of the record, the Secretary's motion for summary affirmance, and the appellant's informal brief, the Court finds that the appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand. *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). The Court is also satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert, supra.* Accordingly, Secretary's mo-

tion for summary affirmance is granted and the October 16, 1996, decision of the Board of Veterans' Appeals is AFFIRMED.