Citation Nr: 1434247 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 11-09 225 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for a neurological disability of the right upper extremity, to include radiculopathy and diabetic peripheral neuropathy, to include as secondary to service-connected diabetes and to presumed exposure to herbicides in the Republic of Vietnam. 

2. Entitlement to service connection for a neurological disability of the left upper extremity, to include radiculopathy and diabetic peripheral neuropathy, to include as secondary to service-connected diabetes and to presumed exposure to herbicides in the Republic of Vietnam. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States



ATTORNEY FOR THE BOARD

Amanda Christensen, Associate Counsel


INTRODUCTION

The Veteran had active service in the United States Army from February 1969 to February 1971, to include duty in the Republic of Vietnam. 

This matter comes before the Board of Veterans' Appeals (Board) from an April 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia. The appeal originates from the RO in Atlanta, Georgia, which has jurisdiction over the claims file. 

In February 2013, the Board remanded the Veteran's claim for additional development. The claim has since been returned to the Board for further appellate action. The Board is satisfied there was substantial compliance with its remand orders. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268, 271 (1998). 

The Veteran's entire claims file, to include the portion contained in the electronic "Virtual VA" system, has been reviewed in this case. 


FINDING OF FACT

The Veteran does not have a current neurological disability of his upper extremities.



CONCLUSIONS OF LAW

1. The criteria for service connection for right upper extremity peripheral neuropathy have not been met. 38 U.S.C.A. §§ 1110, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 3.303, 3.304 (2013).

2. The criteria for service connection for left upper extremity peripheral neuropathy have not been met. 38 U.S.C.A. §§ 1110, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 3.303, 3.304 (2013).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

The Veteran contends that he should be service connected for peripheral neuropathy of the upper extremities due to his exposure to herbicides in Vietnam.

Applicable law provides that service connection will be granted if it is shown that the Veteran experiences a disability resulting from an injury or disease contracted in the line of duty, or for aggravation of a preexisting injury or disease contracted in the line of duty, in the active military, naval, or air service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

Service connection generally requires evidence of a current disability with a relationship or connection to an injury or disease or some other manifestation of the disability during service. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); Mercado-Martinez v. West, 11 Vet. App. 415, 419 (1998) (citing Cuevas v. Principi, 3 Vet. App. 542, 548 (1992)). Establishing service connection generally requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Certain disorders, listed as "chronic" in 38 C.F.R. § 3.309(a) and 38 C.F.R. § 3.303(b), are capable of service connection based on a continuity of symptomatology without respect to an established causal nexus to service. See Walker v. Shinseki, No. 2011-7184, slip op. at 13-14 (Fed. Cir. Feb. 21, 2013) (overruling Savage v. Gober, 10 Vet. App. 488 (1997)). Other organic disorders of the nervous system, which include neuropathies, are included as "chronic" disorders, and can be service-connected on the basis of continuity. Id. 

Other organic disorders of the nervous system, to include neuropathies, if manifest within the first post-service year to a compensable degree, will be presumed to have been incurred in service. 38 C.F.R. §§ 3.307, 3.309. 

Additionally, if a Veteran served in the Republic of Vietnam during the Vietnam era, he or she shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307(a)(6)(iii). Further, if a Veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service: 38 C.F.R. § 3.309(e).

A September 2011 VA treatment note reflects that the Veteran reported he began experiencing the symptoms in his left hand in 1998 but it had worsened beginning in 2008. Post-service private treatment records reflect complaints of left arm numbness and tingling beginning in 2006. 

Private treatment records reflect that in 2008 the Veteran had electrodiagnosic studies done that showed no radiculopathy in his upper extremities, although he had some findings consistent with mild sensory motor polyneuropathy. He had EMG and nerve conduction studies done again in 2009 that did not show findings of leg median or ulnar neuropathy or left cervical radiculopathy. An MRI showed mild multilevel degenerative disc disease and degenerative joint disease with consequent minimal spinal canal stenosis at the C5-C6 level and mild right C5-C6 neuroforaminal stenosis.

The Veteran was afforded a VA examination in May 2014. The Veteran reported severe constant pain, paresthesias and/or dysesthesias, and numbness in his upper extremities. 

The examiner found the Veteran has no current physical pathology or physical etiology for his numbness and pain to upper extremities. There is no current neurological disease. The examiner explained that the Veteran refused another EMG but that previous EMGs were both normal. Further, a June 2009 MRI showed only mild multilevel degenerative disc disease and degenerative joint disease. The examiner noted the Veteran continued to complain of the same symptoms as he complained of in 2009 at the time of his last EMG.

The examiner further concluded that given the onset of the Veteran's physical complaints and the onset of his diabetes it is less likely than not that his claimed undiagnosed numbness/pain, without a diagnosis, is related to his diabetes or his herbicide exposure. The examiner noted that the Veteran's complaints of neuropathy existed prior to his diagnosis of diabetes, therefore if he had neuropathy, it could not be due to diabetic neuropathy.

First, the Board finds that the evidence does not show, and the Veteran has not contended, that he developed neuropathy symptoms in his upper extremities either during service or within the first year after discharge.

The evidence is clear that between 27 and 35 years after service the Veteran began complaining of left arm weakness and tingling. However, the Board finds that despite these complaints, which could indicate a neurological disability, no such disability has actually been diagnosed. The May 2014 VA examiner was specifically requested to examine the Veteran to determine whether he had a neurological disability. As the Veteran refused to undergo a new EMG, the examiner relied on two past EMGs as well as his own examination and review of the record and ultimately concluded that the Veteran does not have a neurological disability.

The Board gives significant probative weight to the objective electrodiagnosic testing and the expert medical opinion of the May 2014 VA examiner.

The Board acknowledges that Veteran is competent to report symptoms such as pain, numbness, and tingling in his upper extremities, as such symptoms are capable of lay observation. Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, even finding the Veteran's description credible, symptoms, such as pain alone, without a diagnosed or identifiable underlying malady or condition, do not, in and of themselves, constitute a disability for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282 (1999). The Veteran is seeking service connection for a neurological disorder, and the Board finds that the preponderance of the evidence is against finding that he has a neurological disorder affecting his upper extremities. To the extent that the Veteran himself has opined that he does, the Board notes that as a lay person he is not competent to opine as to such a complicated medical question. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

As the preponderance of the evidence is against finding that the Veteran has a current neurological disability of his upper extremities, service connection cannot be granted.

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. A notice letter was sent to the Veteran in September 2008, prior to the initial adjudication of the claim on appeal. The Board finds that the content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). 

VA also has a duty to assist the Veteran with the development of facts pertinent to the appeal. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). This duty includes the obtaining of "relevant" records in the custody of a federal department or agency under 38 C.F.R. § 3.159(c)(2), as well as records not in federal custody (e.g., private medical records) under 38 C.F.R. § 3.159(c)(1). VA will also provide a medical examination if such examination is determined to be "necessary" to decide the claim. 38 C.F.R. § 3.159(c)(4).

The Board finds that all necessary development has been accomplished. The RO has obtained the Veteran's service treatment records, VA treatment records, and private treatment records identified by the Veteran. Neither the Veteran nor his representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. 

The Veteran was afforded a VA medical examination in May 2014. The examiner, a medical professional, obtained an accurate history and listened to the Veteran's assertions. The Board notes that the Veteran was offered and declined EMG testing. While VA has a statutory duty to assist the Veteran in developing evidence pertinent to a claim, the Veteran also has a duty to assist and cooperate with VA in developing evidence; the duty to assist is not a one-way street. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991); see also Hayes v. Brown, 5 Vet. App. 60, 68 (1993). The Board finds that the examination is adequate and contains sufficient information to decide the issues on appeal. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio, 16 Vet. App. 183 (2002).



ORDER

Service connection for a neurological disability of the right upper extremity is denied.

Service connection for a neurological disability of the left upper extremity is denied.




____________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs