http://www.va.gov/vetapp16/Files4/1630503.txt

Citation Nr: 1630503 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 08-06 702A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut

THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, including posttraumatic stress and psychotic disorders.

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

M. Caylor, Associate Counsel

INTRODUCTION

The appellant served on active duty for training from June 1 to 21, 1983, as a member of the Army Reserve. She also had unverified periods of inactive duty for training while participating in the Selected Recruit Incentive Program from December 22, 1982, to May 31, 1983, as an administrative specialist trainee. 

This matter comes before the Board of Veterans' Appeals (Board) from a July 2007 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). 

The Board previously denied the appeal in November 2012. The appellant appealed to the United States Court of Appeals for Veterans Claims (Court), which issued a July 2014 memorandum decision vacating and remanding the Board's decision for action consistent with the Court's order. The Board then remanded the claim for additional development in November 2014 and September 2015.

The appellant testified before a Decision Review Officer (DRO) in March 2009 and before the undersigned during a January 2010 videoconference hearing. Transcripts of both hearings are associated with the record.

The issues of entitlement to service connection for hearing loss and tinnitus were previously referred by the Board in several prior remands, but have not yet been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are again referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. The appellant has current diagnoses of bipolar I disorder and borderline personality disorder. 

2. As a matter of law a personality disorder cannot be service connected. 

3. The appellant's bipolar I disorder was not incurred during or aggravated beyond its natural progression by a period of active service and was not superimposed upon her borderline personality disorder during a period of active service.

4. The appellant does not have an additional acquired psychiatric disorder that was superimposed on her borderline personality disorder during a period of active service and resulted in additional disability. 

5. The appellant does not have "veteran status" for her period of active duty for training from June 1, 1863, to June 21, 1863.

CONCLUSIONS OF LAW

1. The criteria for obtaining "veteran status" for the period of active duty for training from June 1, 1983, to June 21, 1983, have not been met. 38 U.S.C.A. § 101(2), (22), (24) (West 2014); 38 C.F.R. § 3.6 (2015).

2. Bipolar disorder I was not incurred or aggravated beyond its natural progression by a period of active service and was not superimposed on a congenital defect. 38 U.S.C.A. §§ 101(24), 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 4.9, 4.127 (2015).

3. A borderline personality disorder is not a disability for VA compensation purposes. 38 U.S.C.A. § 1131; 38 C.F.R. §§ 3.303(c), 4.9, 4.127.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Procedural Duties

The Veterans Claims Assistance Act of 2000 (VCAA), codified at 38 U.S.C.A. §§ 5100, 5102, 5103A, 5107, 5126 (West 2014) provides VA's duties to notify and assist a claimant with development of a claim for compensation benefits. See also 38 C.F.R. §§ 3.102, 3.159, 3.326 (2015). The Veteran was provided satisfactory VCAA notice, and proper assistance through obtaining medical records and scheduling VA examinations. While the appellant did not receive specific VCAA notice regarding personal trauma until October 2015, she presented relevant evidence and testimony regardless, and neither she nor her representative has asserted that she was prejudiced by the delay. While June 2015 requests to three private treatment providers were rejected due to expired authorizations, responses received in 2012 reveal that all three entities had previously communicated that they either had no records or were unable to locate any records regarding the appellant. Neither the appellant nor her representative has asserted that VA failed to request any relevant records not already associated with her claims file.

II. Service Connection 

To receive disability benefits for a service-connected disability, the evidence must demonstrate that an individual with "veteran" status has a current disability that resulted from an injury or disease incurred in or aggravated in the line of duty during a period of active service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303. 
An individual has "veteran" status if he or she had "active military, naval, or air service" and was discharged or released under conditions other than dishonorable. 38 U.S.C.A. § 101(2). Periods of active duty for training and inactive duty training while in the Army Reserve do not automatically qualify as the necessary "active military, naval, or air service" that entitles an individual to "veteran" status. 38 U.S.C.A. § 101(2) (West 2014); Mercado-Martinez v. West, 11 Vet. App. 415, 419 (1998). 

While the appellant has unverified periods of inactive duty training, she contends that her current psychiatric disorders are the result of in-service incidents or injuries which occurred during only her period of active duty for training. To obtain "veteran" status for her period of active duty for training from June 1, 1983, to June 21, 1983, the appellant must have been disabled or died from a disease or injury that was incurred or aggravated in the line of duty during that period of active duty for training. 38 U.S.C.A. §§ 101(2), (22), (24) (West 2014); 38 C.F.R. § 3.6(a)-(c) (2015). The question before the Board is therefore whether any current psychiatric disorder was incurred during, was aggravated beyond their natural progression by, or was superimposed upon a personality disorder during her period of active duty for training. Donnellan v. Shinseki, 24 Vet. App. 167, 172 (2010).

The appellant contends that, while she had been hospitalized several times prior to her enlistment in the Army Reserve, her pre-enlistment psychiatric disorders were acute and transitory and resolved with treatment, as she had not required hospitalization during the years immediately prior to her enlistment and had been able to go to school and work. Alternatively, she concedes that her current psychiatric disorders preexisted but were aggravated beyond their natural progression by her experiences during her period of active duty for training, as she was hospitalized more frequently following her discharge from the Reserve than she had been prior to her enlistment. See March 2009 DRO Hearing Transcript at 2, 10-12; January 2010 Videoconference Hearing Transcript at 2-8.

Of note, as the appellant has only active duty for training and inactive duty training service, unless she obtains "veteran status" for the relevant period of active duty for training from June 1, 1983, to June 21, 1983, the presumption of soundness does not apply. See 38 U.S.C.A. § 101(24)(A)-(B); Smith v. Shinseki, 24 Vet. App. 40, 44 (2010); Paulson v. Brown, 7 Vet. App. 466, 470 (1995). 

The appellant identified several incidents during her period of active duty for training that she contends caused or aggravated her current psychiatric disorders beyond their natural progression. She suffered military sexual trauma and was held in 4-point restraints while hospitalized from June 6, 1983, to June 21, 1983, during her period of active duty for training. She is competent to report these incidents, as she has personal knowledge and they are capable of lay observation. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011). To the extent that she reports being restrained in the hospital her reports are credible. 

Medical evidence, however, conflicts regarding the etiology of the appellant's current psychiatric disorders, and whether they began during, were related to, or were aggravated beyond their natural progression by these in-service incidents.

The appellant has been diagnosed with several different psychiatric disorders since filing her claim in January 2007. 

In April 2012, a private physician determined the appellant's presentation was most consistent with a severe personality disorder rather than schizoaffective disorder, posttraumatic stress disorder, or bipolar disorder. The rationale was that the claimant's main problems were anger, impulsivity, and difficulty getting along with others. See April 2012 Connecticut Mental Health Center Letter to Office of the Public Defender.

A September 2012 VA examiner determined the appellant had a diagnosis of undifferentiated schizophrenia. The rationale was that the appellant was clearly suffering from a psychotic disorder, evidenced by visual hallucinations, delusional beliefs, disorganized speech including frequent derailment, and symptoms of affective flattening, and schizophrenia is well-documented to often have periods of remission. 

In an undated letter received by VA in 2015, a private therapist opined that the appellant had diagnoses of intermittent explosive disorder, bipolar disorder I, and posttraumatic stress disorder. The rationale was that, while her bipolar disorder necessitated hospitalization, her degree of aggressiveness was not better accounted for another psychiatric disorder such as borderline personality disorder, a psychotic disorder, or a manic episode, and the appellant was a military veteran.

The Board previously remanded for clarification of the nature of the Veteran's current psychiatric disorders. 

Two VA examiners opined that the Veteran's symptoms were best described by American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5 ) diagnoses of bipolar disorder I and borderline personality disorder. 

The April 2015 VA examiner's rationale was that the appellant's symptoms did not meet the criteria for posttraumatic stress disorder under the DSM-V. Specifically, she did not meet Criteria B or C because she did not report significant symptoms of either re-experiencing or avoidance. The examiner observed that the appellant did not report flashbacks, nightmares, and did not describe physiological or psychological re-experiencing of traumatic events. The examiner additionally found that a borderline personality disorder complicated the picture by exacerbating impulsivity, irritability, instability in relationships, and paranoid ideation.

A December 2015 VA examiner found that the appellant's mood lability and impulsive/explosive behavior were best explained by diagnosing a bipolar I and borderline personality disorders. The examiner opined that these diagnoses better and more parsimoniously explain the appellant's mood lability and impulsive/explosive behavior because they best explain her cyclic moods, interpersonal instability, affective reactivity, and aggressive outbursts. The examiner opined that the appellant's symptoms of identity disturbance, impulsivity, affective instability, inappropriate/intense anger, difficulty controlling anger, self-injury, and transient stress-related paranoid ideation, diffuse boundaries, and interpersonal instability meet the criteria for borderline personality disorder. The examiner opined that if a personality disorder diagnosis was not made, the appellant's symptoms of identity disturbance and chronic feelings of emptiness would not be explained by bipolar disorder and intermittent explosive disorder. 

The December 2015 examiner further opined that diagnoses of bipolar disorder, schizoaffective disorder, and schizophrenia have overlapping symptomatology, which explained the Veteran's history of having received multiple different diagnoses over time, and why the September 2012 VA examiner diagnosed schizophrenia. However, medical records show a history of manic episodes with irritability, impulsivity, decreased need for sleep, flight of ideas, distractibility, risky and impulsive behavior. A diagnosis of schizophrenia is ruled out when there has been a documented manic episode. Further, a diagnosis of schizoaffective disorder is less than likely because there is no evidence that the appellant's psychotic symptoms occur or exist outside of her mood episodes. The examiner also noted that since the appellant has had at least one full manic episode, bipolar disorder II is also ruled out. Finally, the examiner found that there was no need to add a third diagnosis like intermittent explosive disorder when symptoms are fully explained by the diagnoses of bipolar disorder I and borderline personality disorder. 

The Board assigns great probative weight to the combined opinions of the April 2015 and December 2015 VA examiners. The April 2015 VA examiner personally examined the appellant, and both examiners reviewed the appellant's claims file. At that time the file included numerous notations regarding the appellant's pre-enlistment psychiatric medical history, records from her in-service hospitalization, and private treatment records from several decades following her period of active duty for training. The file also included prior VA examinations and treatment records, as well as transcripts from the appellant's March 2009 decision review officer and January 2010 videoconference hearings. Both examiners provided detailed medical explanations for why the appellant's presentation was best explained by diagnoses of bipolar disorder I and borderline personality disorder. 

While private examiners did examine the appellant in person, and while some had an ongoing treating relationship with the appellant, the private practitioners did not appear to review the appellant's service treatment records or VA examinations. Further, there is no evidence that the private examiners considered her March 2009 and January 2010 hearing testimony, or any VA treatment records prior to providing their opinions. It is also unclear whether the private providers reviewed records from other private treatment providers. Moreover, where medical explanations or rationales were actually provided, the private providers were neither as detailed nor as thorough as the combined opinion of the April 2015 and December 2015 VA examiners. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008) ("[A] medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two."); id. at 304 ("Critical pieces of information from a claimant's medical history can lend credence to the opinion of the medical expert who considers them and detract from the medical opinions of experts who do not."); Gabrielson v. Brown, 7 Vet. App. 36 (1994) (holding that the Board may give greater probative weight to one examiner's opinion over another's based on its reasoning and whether prior clinical records or other pertinent evidence was reviewed). 

The Board acknowledges that the April 2015 and December 2015 VA examiners were not able to review records of the Veteran's hospitalization prior to enlistment and immediately following her discharge on June 21, 1983, but finds that their opinions are still adequate. The record at the time contained the appellant's medical history as recorded in contemporaneous service treatment records, including the Entrance Physical Examination Board's June 1983 report, the March 2009 and January 2010 hearing transcripts, the September 2012 VA examination report, and records of private hospitalization over the years. The information in these documents was largely consistent with the information in the private treatment records received by VA in March 2016 regarding the appellant's pre-enlistment hospitalization in 1979 and post-discharge hospitalization in June 1983. Further, records of the appellant's private treatment and post-service hospitalization beginning July 1983 were already of record as of 2007 and 2008. 

Further, private treatment records from 2016 do not appear to contain any new information or additional diagnoses that were not already considered by the April 2015 and December 2015 VA examiners, as both VA examiners already considered whether the appellant's presentation was best described by a diagnosis of posttraumatic stress disorder.

While the appellant does not believe that she has a diagnosis of bipolar disorder I, as a lay person untrained in the field of medicine, she is not competent to provide a medical determination in this case. The issue is medically complex, involving overlapping symptomatology and decades of treatment and hospitalization, and requires specialized knowledge and training. Jandreau, 492 F.3d at 1377 n.4; Kahana, 24 Vet. App. at 433. Consequently, the Board gives more probative weight to the determinations of the April and December 2015 VA examiners that the appellant does, in fact, have a diagnosis of bipolar disorder I. 

The Board's previous remand requested medical evidence addressing whether any current psychiatric disorder was aggravated beyond their natural progression by her period of active duty for training.

Regarding the appellant's diagnosis of borderline personality disorder, service connection cannot be granted. Under the relevant statutes and regulations, a personality disorder is not a disease or injury. As such, a borderline personality disorder is not a disability for VA compensation purposes. See 38 C.F.R. §§ 3.303, 4.9, 4.127 (2015). 

Service connection can, however, be granted for additional disability resulting from a psychiatric disorder that is superimposed on a personality disorder. 38 C.F.R. §§ 3.303(c), 4.9, 4.127; VAOPGCPREC 82- 90, 55 Fed Reg. 45,711 (July 18, 1990); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); Monroe v. Brown, 4 Vet. App. 513, 514-15 (1993).

Regarding the appellant's diagnosis of bipolar disorder I, the record contains medical evidence that this disability was neither incurred inservice, nor aggravated beyond its natural progression, nor was it superimposed on her personality disorder during her period of active duty for training.

The April 2015 VA examiner opined that the appellant's bipolar disorder I and borderline personality disorder were not incurred during, caused by, or permanently aggravated beyond their natural progression by her military service, including military sexual trauma. The rationale was that the record contained evidence that the appellant's severe mental illness was present prior to her enlistment. Service treatment records noted three prior psychiatric hospitalizations and prior treatment with Thorazine. Further, the appellant reported, and medical records corroborated, that her severe mental illness began during her preteen years and continued post-discharge. Moreover, documentation of her behavior following her discharge does not provide evidence that her symptoms were permanently aggravated while on active duty for training. 

The December 2015 VA examiner opined that the appellant's bipolar disorder I preexisted service, and that the disorder was less likely than not related to or exacerbated by her military service. The rationale was that the appellant's preexisting mental illness was severe in nature, as evidenced by multiple pre-military hospitalizations and living in a group home, her time in the military was brief, and her diagnosis proceeded in a likely course following her discharge. Moreover, according to the DSM-5, a bipolar disorder is recurrent in nature, such that after an individual has a manic episode with psychotic features, subsequent manic episodes become more likely to include psychotic features. Incomplete inter episode recovery was more common when a current episode was accompanied by mood-incongruent psychotic features. 

While neither the April 2015 nor the December 2015 VA examiner provided a specific opinion regarding whether the appellant's bipolar disorder I was superimposed on her borderline personality disorder by her military service, the examiners' opinions that the appellant's bipolar disorder I and borderline personality disorder preexisted her military service and were not exacerbated by her military service are probative and responsive to the question. As the evidence shows that the appellant suffers from a bipolar disorder, and as a bipolar disorder I is the only diagnosed psychiatric disorder which may be service connected, the 2015 VA examiner opinions indicate that she did not develop an additional psychiatric disability as a result of her 21 day term of active duty for training. 

The evidence shows that during her term of active duty for training an entrance physical evaluation board found that appellant's psychiatric symptoms, diagnosed at the time as undifferentiated schizophrenia, did not comprise a service-aggravated condition. The rationale was that she had a long history of similar behavior, prior hospitalizations, and an extensive history of drug abuse. See June 1983 Entrance Physical Evaluation Board Report. Ultimately, the claimant was found to have marked impairment for further military duty and was discharged from the service. While certainly worthy of some probative weight, this opinion less is assigned less probative weight than that assigned to the April 2015 and December 2015 VA examiners, as it does not clearly consider the appellant's assertion that she was a victim of in-service military sexual trauma, and it did not consider the fact that she was restrained while hospitalized.

The Board acknowledges that a private therapist appeared to opine in an undated letter received by VA in 2015, that the appellant's symptoms, diagnosed by the private therapist as intermittent explosive disorder, bipolar disorder I, and posttraumatic stress disorder, were in part related to her military service. The private therapist essentially stated that the appellant's degree of aggressiveness was likely attributable to diagnoses of posttraumatic stress disorder and intermittent explosive disorder because it was not explained by her bipolar disorder, because it was not better accounted for by borderline personality disorder, and because the appellant was a military veteran. 

The Board, however, gives the private therapist's opinion less probative weight than those of the April 2015 and December 2015 VA examiners, as it is unclear whether the private therapist ever reviewed the appellant's service treatment records, service personnel records, or reported pre-enlistment stressors, noted in the September 2012 VA examination and in several private treatment records. Moreover, the private therapist did not address the appellant's pre-enlistment history of aggressiveness or the nature of her military service. See Nieves-Rodriguez, 22 Vet. App. at 304; Gabrielson, 7 Vet. App. 36; Reonal v. Brown, 5 Vet. App. 458, 460-61 (1993) (finding that presumption of credibility did not arise and physician's opinion was based on an inaccurate premise and had no probative value where it relied upon a veteran's inaccurate self-reported medical history and service background). 

While the appellant believes that she developed additional disability during her period of active duty for training, the Board reiterates that she is not competent to provide a medical opinion in this case. 

Moreover, contemporaneous medical and lay evidence, including the appellant's own reports and testimony, appears to support the findings of the April 2015 and December 2015 VA examiners that the appellant's psychiatric disorders-in particular, her bipolar disorder I-were not aggravated beyond their natural progression by the reported in-service incidents during her brief period of active duty for training. 

Evidence in the record confirms that, prior to her enlistment in December 1982, the appellant had experienced significant trauma, including physical and sexual abuse, and had been hospitalized several times for psychiatric treatment. She was first hospitalized in 1977 at the age of 14 for 11 months following a psychotic episode and was placed on several medications. See December 1979 Connecticut Mental Health Center (discharged from Connecticut Valley Hospital in October 1978). 

Approximately one year following her discharge from her initial hospitalization, she was diagnosed with an adjustment reaction of adolescence; however, hospitalization was again considered to avoid a repeat of the previous psychotic episode. See October through December 1979 Connecticut Mental Health Center. She was next hospitalized in 1980 and referred for treatment of alcohol abuse, and reported that she later tapered herself off of prescribed Thorazine while in a group home. See June 1983 Service Treatment Records (last hospitalized three years ago due to drugs). 

The claimant was able to graduate from high school in 1982 and take courses at a community college prior to enlisting in the Army Reserve in December 1982, but had continued seeing an outpatient psychiatrist up to approximately April 1983. See June 1983 Service Treatment Records; June 1983 Walson Army Hospital (last saw outpatient psychiatrist a month and a half ago). 

The evidence also reveals that the appellant was able to continue working and taking courses at a community college following her discharge from the Reserve. Approximately two weeks after her June 21, 1983, discharge from the Reserve, the appellant was again hospitalized, but she voluntarily complied with restraints, and after approximately four weeks she was maintaining good control and seeking admission to a halfway house. See October 1983 Connecticut Mental Health Center. She was hospitalized again in 1985; however, her resume, received by VA in January 2010, reveals that during the four years following her discharge from the Reserve, she was able to graduate with a nurses aid certificate, complete an internship as a recreation aide and activity instructor, work as a live-in nanny, work in packaging and customer service, and graduate from a community college. Between 1988 and the present, the appellant has been hospitalized numerous times; however, private treatment records show that several of the hospitalizations occurred following major life stressors, such as marital or legal problems, including child custody issues; while the appellant was pregnant and unable to take prescribed medication; or during periods when the appellant refused mood stabilizers and/or antipsychotic medications because she did not believe that they worked and did not believe that she has a bipolar disorder I. 

Consequently, the Board finds that the preponderance of the evidence weighs against finding that the appellant's bipolar disorder I was incurred inservice, or that the disorder was aggravated beyond its natural progression by an in-service incident or superimposed on the appellant's borderline personality disorder during her period of active duty for training.

While VA examinations of record have noted that the appellant's borderline personality disorder complicates her overall psychiatric presentation because it aggravates several symptoms of her bipolar disorder I, the Board notes that service connection is not in effect for borderline personality disorder. As noted above, a personality disorder is not a disability for VA compensation purposes. 

In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the appellant's claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet.App. 49 (1990).

 The claim is denied.

ORDER

Entitlement to service connection for an acquired psychiatric disorder, including posttraumatic stress disorder and a psychotic disorder, is denied.

____________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs