# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-1667

Valerie Y. Smith, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued June 9, 2010)                    Decided August 17, 2010)

*Michael G. Smith,* of Little Rock, Arkansas, was on the pleading for the appellant.

*Monique A.S. Allen,* with whom *John H. Thompson*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *David L. Quinn*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, LANCE, and DAVIS, *Judges*.

HAGEL, *Judge*:   Valerie Y. Smith appeals through counsel a May 2, 2008, Board of Veterans' Appeals (Board) decision denying entitlement to VA benefits for (1) residuals of a left meningioma,[1] status post-craniotomy;[2] and (2) gum infections and left ear hearing loss, both claimed as secondary to residuals of left meningioma.  The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the May 2008 Board decision.

This matter was referred to panel to determine which, if any, of three statutory presumptions regarding the incurrence or aggravation of a disease or injury apply to a claimant who has prior active duty service but whose claim for benefits is based on a later period of active duty for training.

---

[1] A meningioma is a "benign, slow-growing tumor of the meninges."  Dorland's Illustrated Medical Dictionary 1149 (31st ed. 2007) [hereinafter Dorland's].  The meninges are the three membranes that envelop the spinal cord and brain.  *Id.*

[2] A craniotomy is an operation on the cranium, which is "the large round superior part of the skull, enclosing the brain."  Dorland's at 435, 436.

Because (1) Ms. Smith is not entitled to the presumptions of service connection and aggravation; (2) the presumption of sound condition does not apply in Ms. Smith's case; (3) the Board's finding of fact that there was no competent medical evidence linking Ms. Smith's disability to her period of active duty for training is not clearly erroneous; (4) VA's notice errors were harmless; and (5) there is no primary service-connected condition on which claims for secondary service connection can be based, the Court will affirm the May 2, 2008, Board decision.

## I. FACTS

Ms. Smith joined the Army National Guard in December 1981. From February through July 1982, as part of her initial training with the National Guard, she served on active duty with the U.S. Army. Her service with the Army extended more than 180 days, thus qualifying her for status as a veteran for purposes of VA benefits. Ms. Smith's National Guard service continued until December 2003. During her National Guard service, Ms. Smith had confirmed periods of active duty for training in June and July 1999, August and September 2000, and June 2002.

In September 1999, Ms. Smith complained to a private physician of headaches that she stated had begun five months prior. Testing revealed a large left frontal temporal meningioma. Private medical records reveal that Ms. Smith underwent a craniotomy to remove the tumor in October 1999.

In October 2001, Ms. Smith sought VA benefits for residuals of the meningioma, among other conditions. In March 2003, a VA regional office denied her claim, along with her claims for left ear hearing loss and gum infections. The regional office determined that Ms. Smith's meningioma did not have its onset during her June and July 1999 periods of active duty for training. Ms. Smith filed a Notice of Disagreement with that decision in April 2003 and ultimately appealed to the Board.

In July 2004, Ms. Smith testified at a Board hearing that she had not suffered any head injuries and that her headaches began in approximately 1988. In June 2006, the Board denied her claims, and Ms. Smith appealed to the Court. In March 2007, the Court granted the parties' joint motion for remand and returned the matter to the Board.

In November 2007, a VA medical examiner reviewed Ms. Smith's claims file. He noted that Ms. Smith complained of headaches in 1987, 1991, and 1998. With respect to the etiology of Ms.

2

Smith's condition, the examiner stated: "I do believe that [her] headaches noted in June and July 1999 were caused by her meningioma. Her [claims file] reveals that she complained of headaches as far back as 1987 and I believe these too were an early symptom of her tumor." Record (R). at 82.

In May 2008, the Board issued the decision on appeal. The Board conceded that Ms. Smith had not been notified that, if service connection were granted, a disability rating and effective date would be assigned, as required by *Dingess v. Nicholson*, 19 Vet.App. 473 (2006), *aff'd sub nom. Hartman v. Nicholson*, 483 F.3d 1311 (Fed. Cir. 2007), but found that error nonprejudical in light of the ultimate conclusion that service connection was not warranted.

Turning to the question of service connection, the Board noted that benefits may be awarded for a disability resulting from disease or injury incurred or aggravated while performing active duty for training. The Board also noted that Ms. Smith does not claim that her headaches manifested during her 1982 period of active duty, but during her 1999 period of active duty for training. The Board found that Ms. Smith's medical records revealed ongoing complaints of headaches between 1991 and 1997 and that there were no records of headache complaints during her 1999 period of active duty for training. The Board found Ms. Smith's statements that she experienced headaches during active duty for training in 1999 credible, insofar as she is competent to relate her symptoms. The Board rejected Ms. Smith's statements to the extent that she asserted that her headaches were symptoms of her later-discovered brain tumor, finding that Ms. Smith lacked the competence to offer a medical opinion on that issue. The Board then concluded that "there is no competent medical evidence that supports the . . . contention of an etiological relationship between her left front temporal meningioma and active service." R. at 12. The Board noted that no medical opinion stated that Ms. Smith's symptoms *began* during any period of active duty for training. Relying on the November 2007 VA medical opinion, the Board concluded that Ms. Smith's headaches "clearly predate" her 1999 period of active duty for training, and therefore she is not entitled to VA benefits for that condition. *Id.* The Board also considered the possibility of presumptive service connection under 38 C.F.R. §§ 3.307 and 3.309, but found that "presumptive periods do not apply" to periods of active duty for training. R. at 13 (citing *Biggins v. Derwinski*, 1 Vet.App. 474, 477-78 (1991)).

On appeal, Ms. Smith makes four arguments. First, she contends that the Board erred in not affording her the presumption of service connection for chronic conditions found in 38 C.F.R.

§ 3.307 and § 3.309 for brain tumors. In that regard, she argues that, as a result of her 1982 period of active duty, she is a veteran for the purposes of § 3.307. Moreover, she asserts that she is entitled to the presumption of sound condition upon her entry into her 1999 period of active duty for training, again because she is a veteran by virtue of her period of active duty. At oral argument, Ms. Smith asserted entitlement to the presumption of aggravation as well. Second, Ms. Smith argues that the Board's finding of fact that there is no competent medical evidence that her disability is related to service is clearly erroneous because the November 2007 VA medical opinion expressly states otherwise. Third, she asserts that the notice she received was inadequate in that it did not address disability rating and effective date nor her secondary service-connection claims. Finally, Ms. Smith contends that the Board erred in dismissing her secondary service-connection claims, inasmuch as she argues that her residuals of meningioma should, in fact, be considered service connected.

In response, the Secretary argues that the Board properly determined that Ms. Smith was not entitled to the presumption of service connection under §§ 3.307 and 3.309 because her claim was based on her period of active duty for training in 1999 rather than her 6-month period of active duty in 1982. The Secretary also argues that the presumption of sound condition is not applicable to Ms. Smith, as it is afforded only "to veterans who served on active duty." Secretary's Brief (Br.) at 8. Next the Secretary contends that the Board's determination that there is no competent medical evidence linking Ms. Smith's condition to her 1999 period of active duty for training is not clearly erroneous. The Secretary does not address Ms. Smith's notice argument, except to assert that, with respect to her secondary service-connection claims, her argument is inapposite because she has not demonstrated entitlement to a primary service-connected condition. *See* Secretary's Br. at 9.

## II. ANALYSIS

### A. Presumptions of Sound Condition, Service Connection, and Aggravation

Ms. Smith argues that the Board erred in failing to recognize her as a "veteran" and in failing to afford her the presumptions of sound condition, service connection, and aggravation. Status as a veteran is one of the five elements of a claim for service-connection benefits. *See Dingess*, 19 Vet.App. at 484. The term "veteran" is defined as "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than

4

dishonorable." 38 U.S.C. § 101(2); 38 C.F.R. § 3.1(d) (2010). The term "active military, naval, or air service" includes, relevant to this case, active duty or "any period of active duty for training during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in [the] line of duty." 38 U.S.C. § 101(24)(A), (B). When a claim for service connection is based only on a period of active duty for training, there must be evidence that the appellant became disabled as a result of a disease or injury incurred or aggravated in the line of duty *during* the period of active duty for training. *See* 38 U.S.C. §§ 101(2), (22), (24); 38 U.S.C. § 1110; *Acciola v. Peake*, 22 Vet.App. 320, 324 (2008) (citing *Mercado-Martinez v. West*, 11 Vet.App. 415, 419 (1998); *Paulson v. Brown*, 7 Vet.App. 466, 470 (1995)). In the absence of such evidence, the period of active duty for training would not qualify as "active military, naval, or air service," and the appellant would not qualify as a "veteran" by virtue of the active duty for training alone. 38 U.S.C. § 101(2), (24); *see Acciola*, 22 Vet.App. at 324.

The question that arises here is whether Ms. Smith, who is a veteran by virtue of her period of active duty service in 1982 but whose claim is based on a later period of active duty for training, is entitled to the presumptions of sound condition, service connection, and aggravation generally afforded to veterans whose claims are based on their periods of active duty. The Court has held that, without previously established veteran status, the presumptions of service connection and sound condition are inapplicable. *See Acciola*, 22 Vet.App. at 324; *Biggins*, 1 Vet.App. at 478. Those cases, however, concerned appellants who had *only* served periods of active duty for training, unlike Ms. Smith, who attained veteran status because she served the required period of active duty service. The question in this case is one of statutory and regulatory interpretation, which the Court reviews de novo. 38 U.S.C. § 7261(a)(1); *see Smith v. Gober*, 14 Vet.App. 227, 230 (2000).

*1. Presumption of Sound Condition*

Under the presumption of sound condition,

> For the purposes of section 1110 of this title, every veteran shall be taken to have been in sound condition when *examined, accepted, and enrolled for service*, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

38 U.S.C. § 1111 (emphasis added).[3] The plain language of the statute states that the presumption of sound condition applies to veterans and contains no other qualifying language to indicate that a veteran such as Ms. Smith should be excluded from entitlement to that presumption. *See Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002) (holding that, in interpreting a statute, the "'starting point . . . is its language'" (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993))); *Black & Decker Corp. v. Comm'r of Internal Revenue*, 986 F.2d 60, 65 (4th Cir. 1993) ("Regulations, like statutes, are interpreted according to canons of construction.").

Veteran status, however, is not the only requirement of section 1111. The statute provides that the presumption applies when a veteran has been "examined, accepted, and enrolled for service," and where that examination revealed no "defects, infirmities, or disorders." 38 U.S.C. § 1111. Plainly, the statute requires that there be an examination prior to entry into the period of service on which the claim is based–here, the period of active duty for training. *See Crowe v. Brown*, 7 Vet.App. 238, 245 (1994) (holding that the presumption of sound condition "attaches only where there has been an induction examination in which the later-complained-of disability was not detected" (citing *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991))). In the absence of such an examination, there is no basis from which to determine whether the claimant was in sound condition upon entry into that period of service on which the claim is based.

At no point in her principal or reply brief did Ms. Smith assert that she had received an examination that showed no defects or infirmities prior to her entry into the June and July 1999 periods of active duty for training on which her claim is based, nor is the Court able to determine from the record whether such an examination was conducted. At oral argument, Ms. Smith noted that, while she was not given an examination directly prior to her entry into her 1999 period of active

---

[3] Section 1110 governs basic entitlement to VA benefits. That statute provides:

> For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.

38 U.S.C. § 1110.

duty for training, the record indicates that several Standard Forms 93 (Report of Medical History) were completed throughout her 22-year service in the Army National Guard. None of those Reports of Medical History appear in the record of proceedings (because none were cited by the parties in their briefs, *see* U.S. VET. APP. R. 28.1(b)(1)(B)), but a November 2007 VA medical opinion references Reports of Medical History from 1981, 1987, 1991, and 1998, and states that Ms. Smith's complaints of headaches were noted on the 1987, 1991, and 1998 forms. R. at 82.

In a supplemental filing submitted on June 8, 2010, in response to a Court order, the Secretary reported that "[a] complete and thorough review of the Record Before the Agency reveals no evidence that [Ms. Smith] received a service examination prior to or at the time of commencement of any of the three 5-day periods of [active duty for training] in June and July 1999." Secretary's Response at 1. At oral argument, the Secretary asserted that there is no requirement that the military provide entrance examinations to reservists entering periods of active duty for training and that the completion of a Report of Medical History is not a sufficient substitute for an entrance examination.

The Board, for its part, implicitly considered the presumption of sound condition when it noted that March 1997, April 1996, and March 1991 "routine Reports of Medical History" taken throughout Ms. Smith's service in the National Guard reflect her complaints of ongoing headaches. R. at 10. The Board concluded that Ms. Smith's condition pre-existed the 1999 period of active duty for training on which her claim was based and was not aggravated by that period of service. However, the Board did not explain the evidentiary standard it applied in reaching these conclusions. *See Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004) (holding that rebuttal of presumption of sound condition requires clear and unmistakable evidence *both* that the condition pre-existed service and that it was not aggravated by service). This was error. *See* 38 U.S.C. § 7104(d)(1) (requiring the Board to provide a written statement of the reasons or bases for its "findings and conclusions[] on all material issues of fact and law presented on the record"). However, in light of the absence of evidence of an examination made contemporaneous with Ms. Smith's entry into the June and July 1999 periods of active duty for training–a fact that Ms. Smith does not dispute–the Court concludes that, under the circumstances of this case, the presumption of sound condition could not apply, and the Board's failure to adequately discuss its application is therefore harmless.

7

38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *see Conway v. Principi*, 353 F.3d 1369, 1374 (Fed. Cir. 2004).

### 2. Presumption of Service Connection

Relevant to the matter before the Court, 38 U.S.C. § 1112, as modified by 38 U.S.C. § 1137, provides that any veteran who served in the active military, naval, or air service after December 31, 1946, is entitled to presumptive service connection for "a chronic disease becoming manifest to a degree of 10 percent or more within one year from the date of separation from such service." 38 U.S.C. § 1112(a)(1); *see* 38 U.S.C. 1137. Malignant brain tumors are among the conditions that can be presumptively service connected. *See* 38 C.F.R. 3.309(a) (2010).

As discussed above, in the context of active duty for training, "active military, naval or air service" means "any period of active duty for training during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in [the] line of duty." 38 U.S.C. § 101(24)(B). It is clear from the language of section 1112 (through section 1137) and section 101, and we so hold, that a claimant whose claim is based on a period of active duty for training can *never* be entitled to the presumption of service connection. By definition, the presumption of service connection applies where there is *no evidence* that a condition began in or was aggravated during the relevant period of service. By contrast, for a claimant whose claim is based on a period of active duty for training to establish entitlement to benefits, there must be *some evidence* that his or her condition was "incurred or aggravated" during the relevant period of service.[4]  38 U.S.C. § 101(24)(B). These circumstances are necessarily mutually exclusive–it is not possible for there to be both *no* evidence and *some* evidence of in-service incurrence of a condition. Accordingly, it

---

[4] The same is also true of a claimant whose claim is based on a period of inactive duty for training, as "active military, naval, or air service" also includes

> any period of inactive duty for training during which the individual concerned was disabled or died–
>
> > (i) from an injury incurred or aggravated *in line of duty*; or
> >
> > (ii) from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident *occurring during such training*.

38 U.S.C. § 101(24)(c) (emphasis added).

is impossible to conclude that Ms. Smith is entitled to the presumption of service connection for her left meningioma.[5]

## 3. Presumption of Aggravation

"[I]f a preexisting disorder is noted upon entry into service, the veteran cannot bring a claim for [disability compensation] for that disorder, but the veteran may bring a claim for [disability compensation for] aggravation of that disorder. In the latter case [38 U.S.C. §] 1153 applies and the burden falls on the veteran to establish aggravation." *Wagner*, 370 F.3d at 1096 (citing *Jensen v. Brown*, 19 F.3d 1413, 1417 (Fed. Cir. 1994)).  Section 1153 provides: "A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease."  "If the presumption of aggravation under section 1153 arises, the burden shifts to the government to show a lack of aggravation by establishing 'that the increase in disability is due to the natural progress of the disease.'" *Wagner*, 370 F.3d at 1096 (citing 38 U.S.C. § 1153).  If VA cannot do so, the increase is presumed to have been caused by active duty service even in the absence of direct evidence of causation.  In other words, the presumption of aggravation only requires evidence of an actual worsening of a preexisting condition *during* service; it does *not* require direct evidence of nexus, that is, that the worsening was *caused* by service.  Because, however, the definition of the phrase "active military, naval or air service" differs for a person serving on active duty and one serving on active duty for training, the proof that a particular disability was aggravated during active duty for training may be established only by direct evidence.  In short, as explained below, the *presumption* of aggravation is not applied  to persons whose claims are based on a period of active duty for training.

---

[5] We note that Ms. Smith's argument on this point relies exclusively on the implementing regulation of section 1112, 38 C.F.R. § 3.307.  The Court, however, discerns a possible inconsistency between section 1112 and § 3.307, in that § 3.307 provides, "In claims based on service on or after January 1, 1947, the date of separation will be the date of discharge or release from *the period of service on which the claim is based*." 38 C.F.R. § 3.307(a)(2) (2010) (emphasis added).  Section 1112, however, requires manifestation of the chronic condition within one year of separation from "such service," which, through the application of section 1137, is a reference to "active military, naval, or air service." 38 U.S.C. § 1112; 38 U.S.C. § 1137.  In light of the Court's holding  that the presumption of service connection can never apply in the case of a veteran such as Ms. Smith, whose claim for benefits is based on a period of active duty for training, the possible inconsistency is irrelevant.  This is so because every claim that might benefit from the presumption of service connection will arise from a period of active duty, rendering the meaning of "such service" in section 1112 and "the period of service on which the claim is based" in § 3.307(a)(2) equal.

9

In order to succeed in a claim based on the aggravation of a disability, section 1153 requires "active military, naval, or air service." However, section 101(24) defines this phrase differently based on the type of duty during which the aggravation of a disability is claimed. The phrase "active military, naval, or air service" is defined as either "active duty" (38 U.S.C. § 101(24)(A)) or "any period of active duty for training during which the individual concerned was disabled or died from a disease or injury or aggravated in the line of duty" (38 U.S.C. § 101(24)(B)). Therefore, in a claim based on a period of active duty, the veteran must initially establish only that a preexisting condition worsened during the period of active duty, and at that point the veteran has the benefit of the presumption of aggravation. *See Wagner*, 370 F.3d at 1096. With respect to a claim for aggravation of a preexisting condition during active duty for training, however, because the "active military, naval, or air service" that, under section 1153, is a prerequsite for benefits based on a theory of aggravation requires the aggravation to occur "in [the] line of duty" (38 U.S.C. § 101(24)(B)), it is clear that the application of section 101(24)(B) requires direct evidence *both* that a worsening of the condition occurred *during* the period of active duty for training *and* that the worsening was *caused by* the period of active duty for training. *See* 38 U.S.C. § 101(24)(B). Because the phrase "active military, naval, or air service" has a distinct meaning with respect to claims based on periods of active duty for training that requires evidence that a preexisting condition was aggravated "in [the] line of duty" (that is, caused by the period of active duty for training), we hold that, where a claim is based on a period of active duty for training, the presumption of aggravation under § 1153 is not applicable.[6]

## B. Remaining Arguments

### 1. Finding of Fact Regarding Medical Evidence

The Board, not the Court, is responsible for assessing the credibility and weight to be given to evidence, and the Court may overturn the Board's assessments only if they are clearly erroneous. *Owens v. Brown*, 7 Vet.App. 429, 433 (1995). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the

---

[6] Again, this is also true of claims based on periods of inactive duty for training. *See* n.3, supra.

definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Ms. Smith argues that the Board's finding of fact that there is no competent medical evidence that her disability is related to service is clearly erroneous because the November 2007 VA medical opinion expressly states otherwise. A review of the November 2007 VA examination report, however, confirms the Board's finding. The examiner did opine that the headaches Ms. Smith complained of during her June and July 1999 period of active duty for training were caused by her meningioma, but he did *not* state that Ms. Smith's headaches, or her underlying meningioma, were caused by or began during this–or any–period of active duty for training. The Court therefore concludes that the Board's finding that there was no competent medical evidence relating Ms. Smith's disability to her 1999 period of active duty for training is not clearly erroneous.

### 2. Duty To Notify

VA must provide notice as to all elements of a claim, including establishing entitlement to an effective date and the assignment of a disability rating. *Dingess*, 19 Vet.App. at 484. Ms. Smith argues that the notice she received was inadequate in that it did not address disability rating and effective date, nor did it address her secondary service-connection claims. Although no VA notice letters appear in the record of proceedings, the Court agrees with the Board's determination that VA's failure to advise Ms. Smith of these two elements of her claim was harmless error. As the Board stated, a disability rating and effective date are not assigned unless there is first a finding that a disability is service connected. Here, the Board found that, because Ms. Smith had been denied entitlement to VA benefits for residuals of a meningioma, the question of how a disability rating and effective date for that condition would have been determined was irrelevant to her claim. Because the Court has determined that benefits for residuals of left meningioma are not warranted for the reasons given in Part II.A above, VA's failure to advise Ms. Smith of all of the information required by *Dingess* is harmless error. *See* 38 U.S.C. § 7261(b)(2); *Conway*, 353 F.3d at 1374; *Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997) (noting that when VA determines that a condition is not related to service, the question of compensation never arises).

Similarly, because Ms. Smith asserts that her gum infections and left ear hearing loss are based on her claim for benefits for residuals of a left meningioma, and because the Court has

determined that VA benefits for that condition are not warranted, VA's failure to advise her of the information and evidence necessary to establish entitlement to benefits on a secondary basis is also harmless error. *See* 38 U.S.C. § 7261(b)(2); *Conway*, 353 F.3d at 1374.

*3. Secondary Service Connection*

A disability may be service connected on a secondary basis by demonstrating that the disability is either (1) "proximately due to or the result of [an already] service-connected disease or injury," 38 C.F.R. § 3.310(a) (2010), or (2) aggravated by an already service-connected disease or injury,"whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition," *Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc). It is axiomatic that there must be a primary service-connected condition for a claimant to establish entitlement to secondary service connection. Because Ms. Smith has not established entitlement to benefits for a left meningioma, the Board's determination that secondary service connection is not warranted for left ear hearing loss and gum infections as secondary to that condition is not clearly erroneous. *See Russo v. Brown*, 9 Vet.App. 46, 50 (1996) (holding that a determination of service connection is a finding of fact the Court reviews under the "clearly erroneous" standard).

## III. CONCLUSION

Upon consideration of the foregoing, the May 2, 2008, Board decision is AFFIRMED.