Citation Nr: 1702620 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 05-12 021 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to service connection for a left eye disorder.

2. Entitlement to service connection for a right testicle disorder.

3. Entitlement to service connection for a heart/cardiovascular disorder, to include residuals of a ruptured thoracic aorta valve repair.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

T. S. Willie, Counsel 


INTRODUCTION

The appellant had active duty for training as a member of the Army National Guard unit from April 7, 1987 to August 21, 1987, and inactive duty for training from August 22, 1987 to October 14, 2009. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2004 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO).

The appellant testified at a hearing before the RO in October 2006. A transcript of that hearing is associated with the claims file.

This case was remanded for further development in October 2006 and May 2015. 


FINDINGS OF FACT

1. A left eye disorder is as likely as not attributable to injury incurred during a period of service.

2. A right testicle disorder is as likely as not attributable to injury incurred during a period of service. 

3. A heart/cardiovascular disorder, to include residuals of a ruptured thoracic aorta valve repair, was not aggravated by a period of service and is not otherwise attributable to service. 


CONCLUSIONS OF LAW

1. With resolution of reasonable doubt in the appellant's favor, the criteria for service connection for a left eye disorder are met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. § 3.303 (2016).

2. With resolution of reasonable doubt in the appellant's favor, the criteria for service connection for a right testicle disorder are met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. § 3.303 (2016).

3. The criteria for service connection for a heart/cardiovascular disorder to include residuals of a ruptured thoracic aorta valve repair are not met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. § 3.303 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to notify and assist

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met with regard to the issues decided herein. There is no issue as to providing an appropriate application or the completeness of the application. By correspondence dated in May 2003 and March 2006, VA advised the appellant of the information and evidence needed to substantiate a claim. The letters provided notice of what part of that evidence is to be provided by the claimant, and what part VA will attempt to obtain. The appellant was also provided information regarding the assignment of disability ratings and effective dates. 

VA has also satisfied its duty to assist. The claims folder contains available service treatment records, VA medical records and VA examinations. 

In connection with the claims for service connection for a left eye disorder, heart disorder and right testicle disorder, the appellant was scheduled for a VA examination per the directives of the May 2015 Board decision. The appellant, however, in January 2016 expressed that he did not want to attend the examinations scheduled for the heart and right testicle disorder. When contacted by the RO the appellant stated that "he only wanted to be seen for the eye exam." Thus, the Board will adjudicate this claim based on the evidence of record pursuant to 38 C.F.R. § 3.655(a). As the appellant failed in his duty to report for his VA examination(s), he must assume the risks associated with his failure to report. Turk v. Peake, 21 Vet. App. 565, 567 (2008).

For the foregoing reasons, the Board concludes that all reasonable efforts were made by VA to obtain evidence necessary to substantiate the claim. No further assistance to the appellant with the development of evidence is required. 38 U.S.C.A. § 5103A(a)(2); 38 C.F.R. § 3.159(d). Accordingly, the Board will address the merits of the claims.

ANALYSIS

Service connection may be established for disability resulting from personal injury sustained or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131. Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d). 

Veteran status is the first element required for a claim for disability benefits. D'Amico v. West, 209 F.3d 1322, 1326 (Fed. Cir. 2000). The term "veteran" means a person who served in the active military, naval, or air service and who was discharged or released therefrom under conditions other than dishonorable. 38 U.S.C.A. § 101(2). The term "active duty" includes full-time duty in the Armed Forces, other than active duty for training (ACDUTRA). 38 U.S.C.A. § 101(21). The term Armed Forces means the United States Army, Navy, Marine Corps, Air Force, and Coast Guard, including the reserve components thereof. 38 U.S.C.A. § 101(10).

Active military, naval, or air service includes any period of ACDUTRA during which the individual concerned was disabled or died from a disease or injury incurred in or aggravated in line of duty or period of inactive duty training (INACDUTRA) during which the individual concerned was disabled or died from injury incurred in or aggravated in line of duty. 38 U.S.C.A. § 101(21) and (24); 38 C.F.R. § 3.6(a) and (d). ACDUTRA is, inter alia, full-time duty in the Armed Forces performed by Reserves for training purposes. 38 C.F.R. § 3.6(c)(1).

When a claim for service connection is based only on a period of ACDUTRA, there must be some evidence that the appellant became disabled as a result of a disease or injury incurred or aggravated in the line of duty during the period of ACDUTRA. Smith v. Shinseki, 24 Vet. App. 40, 47 (2010). In the absence of such evidence, the period of ACDUTRA would not qualify as "active military, naval, or air service," and the appellant would not qualify as a "veteran" by virtue of ACDUTRA service alone. Id. 

Generally, no presumptions (including the presumptions of soundness, aggravation, or for presumptive diseases) attach to periods of ACDUTRA and INACDUTRA unless "veteran" status is attained during those periods. Paulson v. Brown, 7 Vet. App. 466, 470 (1995).

As to the presumption of soundness, it does not apply to a claimant who had only ACDUTRA service and who is not otherwise a veteran. Paulson, 7 Vet. App. at 471. Moreover, even for veterans who have achieved "veteran" status through a prior period of active service and claim a disability incurred only during a different period of ACDUTRA, the presumption of soundness applies only when the veteran has been "examined, accepted, and enrolled for service" and where that examination revealed no "defects, infirmities, or disorders." Smith v. Shinseki, 24 Vet. App. 40, 45-46 (2010). In other words, there must be an entrance examination prior to the specific period of ACDUTRA OR INACDUTRA in which the Veteran claims the disease or injury occurred; otherwise, the presumption of soundness does not attach. Smith, 24 Vet. App. at 45-46. 

With respect to a claim for aggravation of a preexisting condition during a period of ACDUTRA or INACDUTRA, in order for a claimant to establish "veteran" status, the claimant must demonstrate both elements of aggravation - (1) that the preexisting disability permanently worsened in service, and (2) that such worsening was beyond the natural progression of the disease (i.e., such worsening was caused by service). Donnellan v. Shinseki, 24 Vet. App. 167, 174 (2010). In such instances, the claimant is not entitled to the easier presumption of aggravation standard. See 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306(a). The standard of proof for the claimant is the "benefit of the doubt" standard; thus, the claimant must only show that there is an approximate balance of positive and negative evidence to prevail on this matter. Donnellan, 24 Vet. App. at 174. There is no shifting burden to VA as there is when the presumptions of soundness and aggravation apply. Id. at 175.

For purposes of 38 U.S.C.A. § 101(24), the term "injury" refers to the results of an external trauma rather than a degenerative process. See generally VAOPGCPREC 4-2002 (May 14, 2002); VAOPGCPREC 86-90 (July 18, 1990); VAOPGCPREC 8-2001 (Feb. 26, 2001). 

After weighing the evidence, the Board finds in favor of the appellant's claim for service connection for a left eye disability. To that end, in June 1999, the appellant had brake fluid enter his left eye. He stated that, after a few months, his left eye symptomatology eventually resolved. During service in November 2002, while cleaning an oven-using some spray he claims some of the spray got in his eye resulting in what they thought was "pink eye." The line of duty report notes "left eye conjunctivitis."

Dr. M, a private physician, documented in May 2003 that the appellant had a history that included getting brake fluid in his left eye in 1999 that caused a 90% epithelial defect. Over time and treatment, it healed and the appellant was restored back to 20/25 vision uncorrected. Examination disclosed he had 20/20 vision in his right eye and 20/25 in the left. His eye examination was unremarkable except for a small pinguecula that was raised and inflamed and there was evidence of lagophthalmus with small purictate keratopathy in the inferior one third of his cornea. The appellant was advised to turn off ceiling fans and to be careful with air condition vents, and to keep his eye well lubricated. 

In May 2004, the VA examiner found that the appellant did not have any indication of any injury or trauma to his eye. The VA examiner, however, agreed the appellant did have an exposure keratitis, where in his sleep his eyes had a tendency to creep open or to open up slightly allowing the cornea to be exposed to air and become irritated. The most likely cause of this eye problem probably stemmed from the brake fluid the VA examiner found. The VA examiner found that the alleged left eye problem was caused by brake fluid in the eyes in 1999 and that it was highly unlikely that military service beyond summer camp in 2000 had anything to do with his original case of brake fluid in the eye. The VA examiner stated that the appellant had a severe dry eye problem which can be aggravated by not putting the drops in. 

Dr. M expressed in June 2006 that the appellant had a recurrent problem with his cornea in that the left eye would become red and irritated when in a dry or windy environment. 

Dr. B, the appellant's primary care physician, stated in August 2015 that just as expected in 1999 the appellant's left eye resolved without sequela because brake fluid is basically acidity PH with a value of less than 7. He stated that acids have a tendency to sting or burn and then resolve, especially when flushed with water or natural tears. The Alkaline burn from the oven cleaner, however, he stated had the tendency to cause corneal scarring and chronic eye infection depending on length of exposure and the immediate nature of the intervention. Dr. B opined that it was equally as likely that the Akaline burn caused some significant irritation to the appellant's eye in the form of corneal scarring, and therefore the chronic eye irritation, such as redness and keratitis would be the result. 

In contrast, in November 2015, the VA examiner found that the appellant's condition was less likely than not (less than 50 percent probability) related to service. The VA examiner reasoned that there is no treatment or diagnosis in the service treatment records and by the appellant's own statement the issue has resolved. He expressed that Dr. B's letter enters upon speculation and that there is nothing in the record that substantiates his notation that the appellant had an Alkaline burn. 

Here, the appellant has testified that while cleaning during INACDUTRA service he injured his eye when oven spray entered his eye. The Board notes that the appellant is competent to report eye problems and the circumstances surrounding such. Layno v. Brown, 6 Vet. App. 465 (1994). It is shown that the appellant was on inactive duty for training in November 2002 when his eye was injured resulting in the diagnosis of left eye conjunctivitis. Service connection may be granted during a period of INACDUTRA during which the individual concerned was disabled or died from injury incurred in or aggravated in line of duty. The Board finds oven cleaner in the eyes is an external trauma and therefore considered an injury to the eye. Although the Board has been presented with conflicting opinions as to the appellant's left eye disability, the November 2002 line of duty report, lay statements of record and opinion of Dr. B place the evidence in equipoise. Accordingly, resolving reasonable doubt in his favor, service connection for a left eye disorder is granted. 

The Board also finds in favor of service connection for a right testicle disorder. To that end, the appellant argues that his right testicle disorder is caused by lifting heavy objects during his various periods of ACDUTRA or INACDUTRA. 

The evidence shows that, during active duty for training in 1987, the appellant complained of right testicular pain. He again reported right testicular pain after lifting heavy objects in November 2002. There was a line of duty report showing a minor right inguinal strain with minor cord tenderness but nontender testicles. In an August 2007 line of duty report, the appellant again reported burning/aching in his testicles when lifting. There was a strain in the groin from lifting per the record. 

Here, the Board is presented with complaints of right testicle pain throughout the appellant's various periods of ACDUTRA and INACDUTRA. He complained of right groin pain on three occasions in service from heavy lifting. Furthermore, it is shown that the appellant was treated in May 2003 for a right inguinal strain/pain. He attributed his right groin pain to heavy lifting. Although not bothering him that day, he was noted to have occasional right groin pain in December 2003. In June 2004, he had normal testicles bilaterally but epididymitis bilaterally with small reactive hydrocele could not be ruled out. Right epididymitis was shown in October 2004. 

In June 2011, Dr. B stated that the appellant had right testicular pain among other issues. There was a reference to this testicular pain back in 2002 and the appellant was seen by physicians many times for this particular problem on follow up he stated. It was also stated that in an ultrasound it was found that he had some right testicular pain that was related to epididymitis plus a hydrocele. He found that the appellant had right testicular pain and that he had complaints of right testicular pain during his military service including evaluations on August 17, 1987, November 14, 2002, August 2, 2007 and followed thereafter. 

In resolving reasonable doubt in his favor, the Board finds that the heavy lifting in service in November 2002 and August 2007 resulted in chronic right testicle disability. The Board observes that heavy lifting may be an injury during ACDUTRA OR INACDUTRA service. The in-service complaints, lay statements of record and notation of Dr. B place the evidence at least in equipoise. Accordingly, resolving reasonable doubt in his favor, service connection for a right groin disorder is granted. Because there is an approximate balance of positive and negative evidence, the benefit of the doubt must be applied in favor of the appellant. 38 U.S.C.A. § 5107(b); see Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also 38 C.F.R. § 3.102. 

Next, the Board will address the claim for service connection for a heart/cardiovascular disorder. Initially, the Board notes that the appellant was seen for chest pain in November 2002 which is during the same two week annual training period in which Veteran status has been attained. In light of the grant of service connection for the left eye disability and right testicle disorder, "Veteran" status has been attained for this period of time. Thus, during this period, early November 2002, he is considered a veteran for VA purposes. The Board notes, however, that even though Veteran status has been attained the presumption of soundness is not for application. The presumption of soundness applies only when the veteran has been "examined, accepted, and enrolled for service" and where that examination revealed no "defects, infirmities, or disorders." Smith, 24 Vet. App. at 45-46. As the appellant was not provided an examination on entrance to this period of service, the presumption of soundness does not attach. 

The appellant appeals the denial of service connection for a heart disability. He claims that his preexisting heart disability was aggravated during ACDUTRA service from lifting heavy objects. After review of the record, the Board finds against service connection for a heart disability as aggravation of the appellant's preexisting heart disability is not shown. 

To that end, in March 1999, the appellant was in a motor vehicle accident which resulted in a rupture of his thoracic aorta valve that was subsequently repaired. The appellant had subsequent service in November 2002 at which time he reported left chest wall pain after lifting heavy objects. The examiner documented that there was chronic left chest wall pain since aortic valve replacement. 

Aggravation is presumed under 38 U.S.C.A. § 1153 where there is an increase in disability during service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. However, aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 C.F.R. § 3.306(b). The underlying disorder, as opposed to the symptoms, must be shown to have worsened in order to find aggravation. See Hunt v. Derwinski, 1 Vet. App. 292 (1991).

Although the appellant claims that his preexisting heart disability was aggravated during service from lifting heavy objects, the evidence of record is against a showing that the single November 2002 in service complaint of chest pain aggravated the preexisting heart problem. It is notable that a heart diagnosis was not given during the November 2002 examination. Furthermore, outpatient treatment records show stable and excellent postoperative appearance of the heart and lungs in January 2004. The appellant underwent a VA heart examination in June 2004. A history of cardiac surgery with no apparent residuals and occasional atypical chest pain of unknown etiology was diagnosed. 

In December 2006, Dr. K noted that the appellant was his patient and that he had had surgery to repair a transected aorta which he suffered as the result of an automobile accident in 1999. He stated that the appellant was in the military and that he was required to lift heavy objects as part of his duties. According to Dr. K, the Veteran was suffering with chest and side pain which was a result of his previous surgery and lifting heavy objects. He stated that the appellant did not need to lift heavy objects or equipment due to his medical condition postop because it aggravated his muscle spasms. While Dr. K found that the appellant's chest pain was aggravated by heavy lifting, he has not linked any current heart/cardiovascular disability to the in service complaint. 

The Board is also mindful that Dr. B noted in June 2011 that the Veteran complained of chest pain when he lifted and that such was mentioned in service. He, however, also failed to link any current heart/cardiovascular disability to the in service complaints. 

Aggravation of the preexisting heart disability is not shown by the record. At most, there is a complaint of chest pain during a period of service. The Court has held that pain alone, without a diagnosed or underlying malady or condition, is not a disability for which service connection may be granted. Sanchez-Benitez v. West, 13 Vet. App. 282 (1999), aff'd in part, vacated and remanded in part on other grounds, 253 F.3d 1356 (Fed. Cir. 2001). The Board is mindful that hypertensive cardiovascular disease is shown in August 2010 and a history of congestive heart failure in November 2010. None of these disabilities, however, have been attributed to any event or incident in service much less the November 2002 complaint of chest pain. 

In making this determination, the Board notes that the appellant is competent to report heart problems and the circumstances surrounding such. He, however, is not competent to render etiology opinions on the issue presented. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (explaining in footnote 4 that a Veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions). There is no indication that the appellant has the knowledge and/or expertise to render medical opinions addressing whether there was aggravation of his preexisting heart disorder. The Board finds that the issue at hand, i.e. whether there was aggravation of his heart disability, is far too complex a medical question to lend itself to the opinion of a layperson.

The appellant was scheduled for a VA examination in relation to his claim as it was determined that was further development needed. The record shows, however, that he refused the examination. Under 38 C.F.R. § 3.655, when a claimant fails to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record. Here, the Board finds that the record, including the statements from the private physicians, does not support a claim that a heart/cardiovascular disorder permanently worsened in service, and that such worsening was beyond the natural progression of the disease (i.e., such worsening was caused by service). Donnellan, 24 Vet. App. at 174. 

In sum, entitlement to service connection for a heart/cardiovascular disorder is denied. The Board has considered the applicability of the benefit-of-the-doubt doctrine; however, because the preponderance of the evidence is against the claim, that doctrine is not applicable. 38 U.S.C.A. § 5107 (b).


ORDER

Entitlement to service connection for a left eye disorder is granted. 

Entitlement to service connection for a right testicle disorder is granted. 

Entitlement to service connection for a heart/cardiovascular disorder, to include residuals of a ruptured thoracic aorta valve repair is denied. 



____________________________________________
T. MAINELLI
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs