Citation Nr: AXXXXXXXX
Decision Date: 06/29/21 Archive Date: 06/29/21

DOCKET NO. 200610-92148
DATE: June 29, 2021

ORDER

Service connection for bilateral hearing loss is denied.

Service connection for tinnitus is denied.

REMANDED

Service connection for asbestosis with plaques and fibrosis is remanded.

FINDING OF FACT

The preponderance of the evidence is against a finding that the Veteran's hearing loss and tinnitus began during active duty service or within the year thereafter; or that it relates back to the Veteran's active duty service, including noise exposure; or that it was incurred or aggravated in line of duty during a period of active duty for training.

CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss have not been met. 38 C.F.R. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.307, 3.309.

2. The criteria for service connection for tinnitus have not been met. 38 C.F.R. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDING AND CONCLUSIONS

The Veteran served on active duty in the United States Air Force from August 1963 to August 1971. He also served in the U.S. Air National Guard and Reserves from August 1971 to September 1999 with various periods of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA).

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a July 2019 rating decision issued by a VA Regional Office (RO). Therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies. 

In his June 2020 VA Form 10182 Board Appeal, the Veteran elected the Hearing lane. However, in correspondence received by VA in November 2020, the Veteran, through his attorney/representative, stated that he no longer wanted a hearing. The attorney/representative then requested 90 more days to submit additional argument and evidence. Pursuant to the attorney/representative's request, and in accordance with 38 C.F.R. § 20.302(b), the Board's decision is based on the evidence of record at the time of the July 2019 rating decision on appeal and evidence submitted by the Veteran or his representative within 90 days following VA's November 2020 receipt of the Veteran's withdrawal of his request for a Board Hearing. 

The Board has limited the discussion below to the relevant evidence required to support its finding of fact and conclusion of law, as well as to the specific contentions regarding the case as raised directly by the Veteran and those reasonably raised by the record. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Robinson v. Peake, 21 Vet. App. 545, 552 (2008).

SERVICE CONNECTION 

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. 

This includes disability resulting from a disease or injury incurred or aggravated, in line of duty, during a period of ACDUTRA; or for injury incurred, in line of duty, during a period of inactive duty training (INACDUTRA). 38 U.S.C. § 101; 38 C.F.R. § 3.6. 

"To establish a right to compensation for a present disability, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Certain chronic diseases, including organic diseases of the nervous system, such as hearing loss and tinnitus, are presumed to be incurred in or aggravated by service if manifest to a compensable degree within one year of separation from service. See 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309(a); Fountain v. McDonald, 27 Vet. App. 258 (2015). See also Charles v. Principi, 16 Vet. App. 370, 374 (2002) (noting that ringing in the ears is capable of lay observation). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. 

1. Service connection for bilateral hearing loss is denied.

2. Service connection for tinnitus is denied.

The Veteran is requesting service connection for hearing loss and tinnitus. He has not articulated any particular theory of entitlement; however, in correspondence dated in November 2020 his attorney/representative asserted "the Veteran's C&P examination was inadequate as it did not take into consideration the current medical literature concerning the development of hearing loss, which reveals that hearing loss often manifests years after high noise exposure." 

For the reasons that follow, the Board finds that the claims for service connection for hearing loss and tinnitus is not established. 

The Board recognizes the Veteran's 8 years of active duty service from August 1963 to August 1971, and his lengthy service in the Reserves from August 1971 to September 1999 with various periods of ACDUTRA and INACDUTRA. As will be outlined below, the Veteran's hearing loss and tinnitus did not start during his period of active duty, but rather began sometimes during his Reserves service. Although his hearing loss started during a time when he was in the Reserves, there is insufficient evidence that his hearing loss and/or tinnitus was incurred in the line of duty on ACDUTRA or INACDUTRA. See 38 U.S.C. § 101(24). There is also insufficient evidence that his hearing loss and/or tinnitus, diagnosed years after his period of active duty, is attributable to that period of service. Accordingly, the claims must be denied.

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland Consonant-Vowel Nucleus-Consonant (CNC) Test are less than 94 percent. 38 C.F.R. § 3.385. 

Prior to November 1, 1967, service department audiometric test results were reported in standards set forth by the American Standards Association (ASA). Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). In order to facilitate data comparison in this decision, for service department audiometric test results through October 31, 1967, the ASA standards have been converted to ISO-ANSI standards.

Service records confirm that the Veteran served as an Aviation Cadet and an Electronic Warfare Officer during service (see, e.g., Veteran's DD-214s), and the Veteran's exposure to loud noise during service has been conceded. However, the Board finds that the preponderance of the evidence does not show that his current hearing loss and tinnitus are due to service.

Service treatment records (STRs) include the following audiology reports:

August 1963 

Hertz 500 1000 2000 3000 4000

Right ear 15 15 10 5 15

Left ear 10 5 5 0 0

 *ANSI conversion:

Right ear 30 25 10 15 20

Left ear 25 15 15 10 5

February 1965

Hertz 500 1000 2000 3000 4000

Right ear 10 0 -5 0 5

Left ear 5 0 0 0 10

 *ANSI conversion:

Right ear 25 10 5 10 10

Left ear 20 10 10 10 15

February 1966

Hertz 500 1000 2000 3000 4000

Right ear 0 0 0 0 10

Left ear 0 0 0 5 10

 *ANSI conversion:

Right ear 15 10 10 10 15

Left ear 15 10 10 15 15

January 1967

Hertz 500 1000 2000 3000 4000

Right ear -10 -10 -10 0 10

Left ear -10 -10 -10 -5 0

 *ANSI conversion:

Right ear 5 0 0 10 15

Left ear 5 0 0 5 5

January 1968

Hertz 500 1000 2000 3000 4000

Right ear -10 -10 -10 0 5

Left ear -10 -10 -10 0 -5

December 1969

Hertz 500 1000 2000 3000 4000

Right ear 5 0 0 5 15

Left ear 5 10 0 5 20

July 1971 Separation Examination 

Hertz 500 1000 2000 3000 4000

Right ear 0 5 0 10 15

Left ear 0 10 0 15 15

These hearing thresholds during the Veteran's active duty service do not meet VA's definition of hearing loss. See 38 C.F.R. § 3.385. There are no other relevant records regarding the Veteran's hearing or tinnitus during active duty service. That is, the records are silent as to complaints, treatment, or diagnoses related to hearing loss and/or tinnitus during this timeframe.

In August 1971, the Veteran separated from active duty service, and he apparently entered the National Guard/Reserves the next day. He served in the Reserves for 28 years until his separation in September 1999. 

The Veteran's service records include numerous audiograms during his time in the Reserves. The Board need not list all of them here but highlights two here for purposes of noting that his hearing loss was in fact noted during the time period when he was in the Reserves. For example, a March 1991 examination notes high frequency hearing loss, right greater than the left with auditory thresholds as follows:

March 1991

Hertz 500 1000 2000 3000 4000

Right ear 25 20 30 45 45

Left ear 10 0 5 0 15

Similarly, a February 1995 Reserves audiological examination shows hearing thresholds as follows:

Hertz 500 1000 2000 3000 4000

Right ear 10 20 15 30 30

Left ear 10 10 25 30 45

Again, although hearing loss is shown within the Veteran's Reserves treatment records, the Board emphasizes this does not equate to in-service incurrence of hearing loss and/or tinnitus. 

The Veteran's military personnel records indicate "service points" from his time period in the reserves showing he did not serve continuously in those years on ACDUTRA or INACDUTRA, but rather periodic days in any given year. It does not appear he was afforded an "entrance examination" corresponding with each and every period of his ACDUTRA and/or INACDUTRA.

The distinction is important because typically, a veteran who is not noted to have a preexisting condition upon entrance into service is presumed to have entered service in sound condition. 38 U.S.C. § 1111. The presumption of soundness applies to all who served on active duty. When a veteran's military service is limited to National Guard service or reserve service on ACDUTRA or INACDUTRA (or some combination thereof), the presumption operates differently and typically does not apply. See Smith v. Shinseki, 24 Vet. App. 40 (2010). Indeed, the presumption of soundness only applies for periods of ACDUTRA only when the veteran has been "examined, accepted, and enrolled for service" and where that examination revealed no "defects, infirmities, or disorders." Smith, 24 Vet. App. at 4546.

In this case, the Board presumes the Veteran entered in sound condition for his period of active duty from August 1963 to August 1971. In contrast, because the Veteran did not receive an entrance examination for every period of ACDUTRA, the presumption of soundness cannot apply for his Reserves service from August 1971 to September 1999. It cannot be presumed that merely because his high frequency hearing loss is noted in later Reserves examinations (as outlined above), that it was incurred in the line of duty during a period of ACDUTRA or INACDUTRA. 

The pertinent inquiry, here, then is whether the Veteran's hearing loss and/or tinnitus likely incurred during a period of active duty or incurred in the line of duty during a period of ACDUTRA or INACDUTRA. Smith, 24 Vet. App. at 47; 38 U.S.C. § 101(24). 

The Veteran was afforded a VA audiological examination in Mary 2019 where the examiner confirmed a diagnosis of bilateral sensorineural hearing loss and tinnitus. The examiner opined that the Veteran's hearing loss was not related to service because the hearing loss "developed after 1971 and active duty." The examiner acknowledged the Veteran's "high probability of hazardous noise exposure" in service but found no significant threshold shifts indicative of hearing loss until after service. Indeed, the examiner noted reviewing over 10 audiograms in the record, as early as 1963 through 1995, but that the earliest evidence of any significant hearing loss in either ear at any threshold level was the 1979 audiogram showing right ear hearing loss at 4000 Hertz. Thus, it appears hearing loss did not develop until after the Veteran's period of active duty and, in the examiner's opinion, this made it less likely than not that the military noise exposure resulted in hearing loss.

Similarly, while the examiner found the Veteran's tinnitus was likely associated with his hearing loss, it was opined as unlikely associated with service given that the Veteran did not complain of tinnitus "until 2012 (over 40 years later)."

The Board finds the May 2019 VA examiner's opinion persuasive as it is based on a thorough review of the claims folder, consideration of the Veteran's statements, and current examination. Also noteworthy, there is no medical opinion evidence to the contrary.

As for the attorney/representative's November 2020 argument that the C&P examination was inadequate because the examiner did not take into consideration the current medical literature concerning the development of hearing loss (which he says reveals that hearing loss often manifests years after high noise exposure), the Board notes that the record does not contain any such evidence. There specifically was no such literature in the record at the time of the June 2019 rating decision, and neither the Veteran or his attorney/representative submitted the referenced material during the additional November 2020 February 2021 evidentiary window. The Board thus finds that the May 2019 VA examination opinion was adequate as it was based on the evidence of record at that time. There consequently was no pre-decisional duty to assist error on the part of the RO regarding the May 2019 VA examination and therefore no basis for the Board to return the matter to the AOJ for a new examination. 

The Board accordingly finds that there is not an approximate balance of positive and negative evidence. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. In so finding the Board has considered the circumstances of the Veteran's service and concedes that the Veteran was exposed to loud noise during his military service. However, based on the lay evidence (and lack thereof) and the medical evidence of record, the Board finds that the Veteran's current disability of bilateral hearing loss did not begin during active service or manifest, to a compensable degree, within one year of separation from active service; and there is no indication that the Veteran's hearing loss or tinnitus began in line of duty during a period of ACDUTRA or INACDUTRA. Smith, 24 Vet. App. 40.

The Board also finds the Veteran's current disability of tinnitus did not begin during service and is not related to the Veteran's service, including the Veteran's exposure to loud noise exposure; nor did it begin within one year of separation from active service. Based on the Veteran's own report during his May 2019 VA examination, his tinnitus began around 2012; more than 50 years after his 1971 separation from active duty service. This does not reflect incurrence during service, on in the year after separation from active duty service. 

Service connection for bilateral hearing loss and tinnitus, presumptive or otherwise, is thus not warranted and the appeal is denied.

REASONS FOR REMAND

1. Service connection for asbestosis with plaques and fibrosis is remanded.

The Veteran is also requesting service connection for asbestosis due to asbestos exposure. He thinks that he may have been exposed to asbestos during his work as a crewmember on a B52 bomber. See June 5, 2019 statement from Veteran. In correspondence dated in November 2020, the Veteran's attorney/representative contended that x-ray findings in December 1969 of increased density of the right lung peripherally was "indicative of asbestosis due to asbestos exposure." The attorney/representative then stated: "it is at least as likely as not that his medical visits during his military service showing changes to his lungs was indicative of asbestosis due to asbestos exposure." 

On review of the evidence the Board finds that, based on the evidence of record at the time of the July 2019 rating decision, the RO erred in not obtaining a VA examination. 

Per VA's duty to assist, the Secretary must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, (2) evidence establishing that an event, injury, or disease occurred in service, or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability, but (4) there is insufficient competent medical evidence on file for the Secretary to make a decision on the claim. McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also 38 U.S.C. § 5103A(d)(2), 38 C.F.R. § 3.159(c)(4)(i). The third prong, which requires that the evidence of record "indicate" that the claimed disability or symptoms "may be" associated with the established event, is a low threshold. McLendon, 20 Vet. App. at 83. 

STRs contain evidence of manifestations involving the lung(s) during service. X-rays of the chest in February 1966 found blunting of the right costophrenic angle and evidence of pleural thickening along the lateral chest wall. Thereafter, chest x-rays in January 1968 found "no evidence of active parenchymal disease;" however, x-rays of the chest in December 1969 found the right hemithorax to be somewhat contracted and some increased density of the right lung peripherally. The radiologist also noted that the costophrenic angle was blunted and the rib interspaces were narrowed. 

Additionally, the medical evidence at the time of the July 2019 rating decision provided a current diagnosis of asbestosis. See, e.g., March 2010 radiology findings of asbestosis with "extensive pleural calcification is seen in the right hemithorax consistent with history of asbestos exposure;" and March 2019 letter from a private pulmonologist, who advised that the Veteran "has advanced asbestosis with significant pleural plaques seen on CT chest and chest x-ray." 

There was also an indication, at the time of the July 2019 rating decision, that the Veteran's current lung disease may be related to his service. See correspondence from the Veteran received by VA in June 2019.

However, the RO did not afford the Veteran a VA examination; a pre-decisional duty to assist error. 38 C.F.R. § 3.159(c)(4)(i). See also McLendon, 20 Vet. App. 79. Remand for correction of this pre-decisional duty to assist error is warranted. 38 C.F.R. § 20.802. 

The matter is REMANDED for the following action:

1. Schedule the Veteran for a VA examination regarding the claim for service connection for asbestosis /lung disease with plaques and fibrosis. The examiner must review the claims file and note that the claims file review took place.

The examiner is asked to provide a response to the following:

Whether the Veteran's asbestosis /lung disease with plaques and fibrosis at least as likely as not 

(a.) began during active service, 

(b.) is related to some incident of his active service.

The examiner must specifically address x-ray findings, during service, of blunting of the right costophrenic angle, pleural thickening along the lateral chest wall, contracted right hemithorax, and increased density of the right lung peripherally, and narrowed rib interspaces. The examiner must also discuss the current asbestosis diagnosis, and the March - April 2010 radiology findings of extensive pleural calcification in the right hemithorax consistent with history of asbestos exposure. 

The examiner should consider all medical and lay evidence of record and offer a complete rationale for each opinion expressed. Facts and medical principles relied upon to arrive at an opinion should be set forth.

In considering the Veteran's lay report and the lay statements of record, the examiner should note that the Veteran is competent to attest to matters of which he had first-hand knowledge, including observable symptomatology during service. 

If there is a medical basis to support or doubt the history provided by the Veteran, the clinician should provide a reasoned explanation.

(Continued on the next page)

 

If the examiner concludes that any of the above questions cannot be resolved without resorting to speculation, then a detailed medical explanation as to why this is so should be provided.

2. After completion of the above directives and any other necessary action, re-adjudicate the claim.

 

 

SHEREEN M. MARCUS

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board P. Childers, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.